2010 UT App 139

**Valerie J. CONNELL, Petitioner and Appellant,**

v.

**Harold G. CONNELL, Respondent and Appellee.**

**No. 20080619–CA.**

Court of Appeals of Utah.

May 27, 2010.

Clark R. Nielsen and Kathryn J. Steffey, Salt Lake City, for Appellant.

Harold G. Connell, Lehi, Appellee Pro Se.

Before Judges DAVIS, VOROS, and BENCH.[1]

## OPINION

VOROS, Judge:

¶ 1 Petitioner Valerie J. Connell (Wife) appeals various rulings in the trial court's sixty-five-page divorce decree. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2 Wife and Respondent Harold G. Connell (Husband) married in 1986. At the time, Wife had one child, whom Husband later adopted. The parties had six children together. At the time of the divorce petition, these children were ages fourteen, eleven, eight, six, four, and almost two.

¶ 3 After several temporary separations, the parties separated permanently in October 2001. Wife remained in the marital home with the children, made the house payments, and paid the children's expenses. She filed for divorce in April 2002, and in May 2002, the trial court entered temporary orders. Wife was granted custody of the children. Husband was ordered to maintain health insurance for Wife and the children and car insurance on the parties' vehicles. The court also ordered Husband to pay $230 per month in alimony and $1797 per month in child support. Further, on the assumption that Wife would need to work outside the home, the court ordered the parties to share equally any work-related child care expenses. Husband repeatedly failed to comply with these orders. The court found him in contempt at least once with respect to each of the orders.

¶ 4 In September 2005, the trial court bifurcated the proceedings and granted Wife a divorce. After a four-day trial in late 2006, the trial court entered findings of fact and conclusions of law respecting property distribution, alimony, child support, attorney fees, and related matters. It entered a final amended divorce decree in June 2008. Wife appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 Wife's claims on appeal fall into four categories. First, she contends that the trial court erred by terminating alimony when she began working full-time in November 2003 and by denying future alimony. "We review a trial court's award of alimony for an abuse of discretion." *Bakanowski v. Bakanowski*, 2003 UT App 357, ¶ 7, 80 P.3d 153. Thus, "[w]e will not disturb a trial court's ruling on alimony as long as the court exercises its discretion within the bounds and under the standards we have set and has supported its decision with adequate findings and conclusions." *Bell v. Bell*, 810 P.2d 489, 491 (Utah Ct.App.1991) (internal quotation marks omitted).

¶ 6 Second, Wife contends that the trial court erred by awarding her only 15% of her attorney fees. Generally, "[w]e review a trial court's decision regarding attorney fees in a divorce proceeding for an abuse of discretion." *Jensen v. Jensen*, 2008 UT App 392, ¶ 8, 197 P.3d 117. However, "the proper interpretation of a statute is a question of law." *Rushton v. Salt Lake County*, 1999 UT 36, ¶ 17, 977 P.2d 1201. Thus, the interpretation of the attorney fee statute is reviewed for correctness. *See Bilanzich v. Lonetti*, 2007 UT 26, ¶ 10, 160 P.3d 1041.

¶ 7 Third, Wife contends that the trial court erred by denying retroactive child support and nanny care costs. We review a trial court's child support order for an abuse of discretion. *See Hill v. Hill*, 841 P.2d 722, 724 (Utah Ct.App.1992).

¶ 8 Finally, Wife contends that the trial court erred by refusing to award her reimbursement for one-half of the mortgage payments she made on the parties' marital home. We treat this issue as a request for

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment pursuant to Utah Code section 78A–3–103(2) (2008) and rule 11–201(6) of the Supreme Court Rules of Professional Practice.

an "equitable order[ ] relating to the children, property, debts or obligations, and parties," *see* Utah Code Ann. § 30–3–5(1) (2008).[2] A trial court is given broad discretion in rendering such orders, which we review for an abuse of discretion. *See Newmeyer v. Newmeyer*, 745 P.2d 1276, 1277 (Utah 1987).

## ANALYSIS

### I. Alimony

■ ¶ 9 Wife challenges the trial court's decision to terminate her alimony after November 2003 and deny her future alimony. "[T]he principal purpose of alimony is economic, to enable the receiving spouse to maintain as nearly as possible the standard of living enjoyed during the marriage and to prevent the spouse from becoming a public charge." *Myers v. Myers*, 2010 UT App 74, ¶ 12, 231 P.3d 815 (internal quotation marks omitted). In fashioning an alimony award, trial courts must consider the statutory factors set forth in Utah Code section 30–3–5. *See* Utah Code Ann. § 30–3–5(8)(a). "If a trial court considers these factors in setting an award of alimony, we will not disturb its award absent a showing that such a serious inequity has resulted as to manifest a clear abuse of discretion." *Bakanowski*, 2003 UT App 357, ¶ 10, 80 P.3d 153 (internal quotation marks omitted).

¶ 10 Wife contends that the trial court's decision to terminate alimony and deny future alimony was based on three subsidiary errors by the trial court: (1) failure to adequately consider all of the mandatory statutory factors; (2) failure to impute Husband's higher historical income to him; and (3) failure to enforce the court's own prior ruling

that Husband would be precluded from claiming that his second wife (Second Wife) was unable to share living expenses. We address each contention in turn.

### A. Statutory Factors

■ ¶ 11 Wife contends that the trial court failed to make adequate factual findings regarding the third mandatory factor set forth in Utah Code section 30–3–5, Husband's ability to provide support. *See* Utah Code Ann. § 30–3–5(8)(a)(iii). Specifically, Wife argues that the trial court's consideration of Husband's ability to pay was limited to examining his monthly income. Wife does not challenge the court's analysis under any of the other statutory factors.

■ ¶ 12 In determining alimony, the trial court must consider several statutory factors, including the recipient spouse's needs and earning capacity and the payor spouse's ability to pay. *See id.* § 30–3–5(8).[3] For each statutory factor, "the trial court must make sufficiently detailed findings of fact ... to enable a reviewing court to ensure that the trial court's discretionary determination was rationally based upon these ... factors." *Bell v. Bell*, 810 P.2d 489, 492 (Utah Ct.App.1991). These detailed findings " 'should ... include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached.' " *Rehn v. Rehn*, 1999 UT App 41, ¶ 6, 974 P.2d 306 (omission in original) (quoting *Stevens v. Stevens*, 754 P.2d 952, 958 (Utah Ct.App.1988)). "A trial court's failure to provide adequate findings [regarding the statutory factors] is reversible error when the facts [that logically support the findings]

---

2. Most of the relevant portions of the Utah Code have not changed from those in effect at the time of the divorce. In those cases, we cite to the current version of the Utah Code for the reader's convenience.

3. Utah Code section 30–3–5 outlines the factors a court must consider when determining alimony:
 (i) the financial condition and needs of the recipient spouse;
 (ii) the recipient's earning capacity or ability to produce income;
 (iii) the ability of the payor spouse to provide support;
 (iv) the length of the marriage;
 (v) whether the recipient spouse has custody of minor children requiring support;
 (vi) whether the recipient spouse worked in a business owned or operated by the payor spouse; and
 (vii) whether the recipient spouse directly contributed to any increase in the payor spouse's skill by paying for education received by the payor spouse or allowing the payor spouse to attend school during the marriage.
Utah Code Ann. § 30–3–5(8) (2008).

are not clear from the record." *Andrus v. Andrus,* 2007 UT App 291, ¶ 17, 169 P.3d 754. In addition, an adequate analysis of the factor regarding ability to pay "must do more than simply state the payor spouse's income." *Young v. Young,* 2009 UT App 3, ¶ 19, 201 P.3d 301 (citation omitted), *cert. denied,* 211 P.3d 986 (Utah 2009). The court must also consider the payor spouse's "needs and expenditures, such as housing, payment of debts, and other living expenses." *Id.* (emphasis and internal quotation marks omitted).

¶ 13 Here, the trial court found that Husband had a monthly income of $5996, a monthly rent payment of $752, monthly living expenses for himself and Second Wife of $1500, child-care costs of $380 per month, and child support payments of $1394 per month. Further, the court referenced Husband's financial declaration, which included a detailed list of Husband's other expenses, including insurance and transportation expenses. The court even attempted to estimate Husband's net monthly income to the penny after subtracting all expenses, including Wife's requested alimony award. In short, the trial court's findings are sufficiently detailed to demonstrate that its determination of alimony was rationally based. We find no abuse of discretion here.

## B. Imputation of Income

¶ 14 Wife contends that the trial court erred in determining Husband's monthly income. During the marriage, Husband worked at Novell, Inc., where he earned $7979 per month. In June 2001, he left Novell to work for the Corporation of the Presiding Bishop, and then in February 2006 he took a job at Brigham Young University (BYU), where he earned $5996 per month. However, Husband was forced to resign from BYU because he failed to fulfill a condition of employment. At the time of the divorce decree, Husband was earning $5000 per month. During the marriage, Husband was the family's sole breadwinner. Beginning in November 2003, however, Wife began working full-time, earning about $6700 per month. Husband remarried in October 2005 and became the sole breadwinner in his new household.

¶ 15 The trial court set Husband's monthly income at $5996, the amount he was earning while working at BYU. That amount was more than he was earning at the time of trial but less than the $7979 per month he had earned at Novell. Wife contends that the trial court should have imputed to Husband his higher Novell income because he "voluntarily" left his employment there. The court's failure to do so, she argues, was an abuse of discretion.

[12] ¶ 16 A court may impute income to an underemployed spouse for purposes of calculating alimony. *See Griffith v. Griffith,* 959 P.2d 1015, 1018 (Utah Ct.App.1998), *aff'd,* 1999 UT 78, 985 P.2d 255. The purpose of such imputation "is to prevent parents from reducing their child support or alimony by purposeful unemployment or underemployment." *Id.* A court may thus impute income to a spouse only if, upon examining the spouse's historical and current earnings, it determines that the spouse is "voluntarily unemployed or underemployed." Utah Code Ann. § 78-45-7.5(5)(c), (7)(a) (2002) (current version as amended at Utah Code Ann. § 78B-12-203 (2008));[4] *see also Hall v. Hall,* 858 P.2d 1018, 1024 (Utah Ct. App.1993).

¶ 17 However, a finding of voluntary underemployment does not require a court to impute the higher income; it merely allows it to do so. *See Hill v. Hill,* 869 P.2d 963, 964–65 (Utah Ct.App.1994) (stating that a court *may* impute income upon a finding of voluntary underemployment); *accord Reinhart v. Reinhart,* 963 P.2d 757, 758 (Utah Ct.App. 1998). Thus the court maintains its "broad

**4.** In 2007, Utah Code section 78-45-7.5 was renumbered as section 78B-12-203 and the word "voluntarily" was deleted. *See* Utah Code Ann. § 78B-12-203 (2008). The 2007 amendment was not effective until July 1, 2007, *see id.* § 78B-12-203 amend. notes, which was after all the events of this case occurred. "[W]hen adjudicating a dispute we apply the version of the statute that was in effect at the time of the events giving rise to [the] [action]." *Harvey v. Cedar Hills City,* 2010 UT 12, ¶ 12, 227 P.3d 256 (first alteration in original) (internal quotation marks omitted). We therefore apply the former section, which requires an analysis of whether Husband was voluntarily underemployed. *See* Utah Code Ann. § 78-45-7.5(7)(a) (2002).

discretion to select an appropriate method of assessing a spouse's income." *Griffith*, 959 P.2d at 1019.

¶ 18 Here, the trial court found that Husband's decision to leave Novell for other employment was reasonably calculated to maximize his income. The court found persuasive Husband's testimony that he left Novell for a slightly lower paying job out of a legitimate concern that he would be laid off. Thus, the decrease in Husband's income upon leaving Novell "resulted not from his personal preference or voluntary decisions, but instead resulted from events beyond his control." *Hall*, 858 P.2d at 1025. Accordingly, while the trial court did state that Husband "voluntarily left [his] employment at Novell for a lower paying job," the court did not find that he was underemployed as a result of this employment move.

¶ 19 However, the trial court found that Husband was voluntarily underemployed as a result of a different employment move. The court found that Husband's forced resignation from BYU was caused by his voluntary failure to maintain compliance with conditions of employment there. Accordingly, although Husband was earning $5000 at the time of trial, the court imputed to him an income of $5996 per month, the amount he was earning while employed at BYU.

¶ 20 These rulings of the trial court fall within its broad discretion. We see no basis for disturbing them.

## C. Unenforced Ruling

▇▇ ¶ 21 Wife contends that the trial court erred by failing to enforce its own prior ruling that would have barred Husband from claiming that Second Wife was unable to work and contribute to his living expenses.

¶ 22 For purposes of determining the payor's ability to pay alimony, the trial court may consider the payor's "subsequent spouse's financial ability to share living expenses." Utah Code Ann. § 30-3-5(8)(g)(iii)(A) (2008). During discovery, Wife

sought, through document requests and by scheduling a deposition, financial information relating to Second Wife's ability to share living expenses. However, Wife was unable to obtain all of Second Wife's relevant financial information, was forced to cancel the deposition, and was consequently unable to fully explore Second Wife's ability to share living expenses. Wife's efforts were thwarted, in the trial court's words, because of Husband's "unvarying pattern . . . [of] trying to duck and to evade and to avoid and to withhold" relevant information. As a result, the trial court imposed on him a five-day jail sentence. In an apparent attempt to maintain the trial date without penalizing Wife for Husband's intransigence in discovery, the trial court promised to prevent Husband from defending on any issue in which Husband withheld discovery:

> If it turns out that we get to trial and [Wife] is unable to present the necessary evidence based on [Husband's] failure to provide the necessary evidence through the discovery, I'm going to make the ruling that [Husband] will be precluded from defending on that issue; so, in effect, [Wife] get[s] part of what [she] want[s].[ 5]

¶ 23 On appeal, Wife asserts that the trial court "should have enforced its [previous r]uling and held that [Husband] is precluded from defending on th[is] issue." We understand Wife's argument to be that Husband should have been barred from asserting that Wife failed to show Second Wife's ability to contribute to living expenses.

▇▇ ¶ 24 We conclude that this issue was not preserved. "[I]n order to preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (internal quotation marks omitted). Thus, the issue must be timely and specifically raised, and supported by evidence or relevant legal authority. *See id.*

¶ 25 At trial, Wife never asked the trial court to preclude Husband from defending

5. We note that precluding Husband from defending on this issue was less useful to Wife than an order compelling discovery. This is so because Wife needed evidence in Husband's possession to make her prima facie showing.

on the issue of whether Second Wife could contribute to Husband's living expenses. Even when Husband "defend[ed] on that issue," asserting in his response to Wife's proposed memorandum decision that Wife had not established that Second Wife could contribute to living expenses, Wife did not invoke the court's previous ruling. The trial court was therefore not given the opportunity to address the issue. Accordingly, we conclude that this issue was not preserved and we do not address it further.[6]

## II. Attorney Fees

■ ¶ 26 Wife contends that the trial court erred by awarding her only 15% of her attorney fees. Because we conclude that the trial court incorrectly interpreted the statutes governing the determination of attorney fees, we reverse and remand for further proceedings.

■ ¶ 27 Pursuant to Utah Code section 30–3–3, a trial court may award attorney fees in a divorce action. *See* Utah Code Ann. § 30–3–3 (Supp.2009). "Both the decision to award attorney fees and the amount of such fees are within the trial court's sound discretion." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 49, 176 P.3d 476. Should the trial court decide to award fees, it must make detailed findings of fact supporting its determination. *See generally Willey v. Willey*, 951 P.2d 226, 230 (Utah 1997) ("Without adequate findings of fact, there can be no meaningful appellate review."). Typically, the trial court must base its fee award on (1) the receiving spouse's financial need, (2) the payor spouse's ability to pay, and (3) the reasonableness of the requested fees. *Oliekan v. Oliekan*, 2006 UT App 405, ¶ 30, 147 P.3d 464.

¶ 28 Utah Code section 30–3–3 creates two classes of attorney fees—those incurred in *establishing* court orders and those incurred in *enforcing* court orders:

(1) In any action ... to *establish* an order of custody, parent-time, child support, alimony, or division of property in a

domestic case, the court may order a party to pay the costs, attorney fees, and witness fees, including expert witness fees, of the other party to enable the other party to prosecute or defend the action. The order may include provision for costs of the action.

(2) In any action to *enforce* an order of custody, parent-time, child support, alimony, or division of property in a domestic case, the court may award costs and attorney fees upon determining that the party substantially prevailed upon the claim or defense. The court, in its discretion, may award no fees or limited fees against a party if the court finds the party is impecunious or enters in the record the reason for not awarding fees.

Utah Code Ann. § 30–3–3(1)–(2) (emphases added). Fees awarded under subsection (1) must be based on the usual factors of need, ability to pay, and reasonableness. *See Stonehocker*, 2008 UT App 11, ¶ 49, 176 P.3d 476. By contrast, in awarding fees under subsection (2), the court "may disregard the financial need of the moving party." *Finlayson v. Finlayson*, 874 P.2d 843, 850 (Utah Ct.App.1994); *see also Lyngle v. Lyngle*, 831 P.2d 1027, 1030 (Utah Ct.App.1992) ("In an action to enforce the provisions of a divorce decree, an award of attorney fees is based solely upon the trial court's discretion, regardless of the financial need of the moving party."). The guiding factor in fee awards under subsection (2) is whether the party seeking an award of fees substantially prevailed on the claim. *See* Utah Code Ann. § 30–3–3(2).

¶ 29 The subsections have different requirements because they have different purposes. Attorney fees are granted under subsection (1) to enable a party "to prosecute or defend the action." *Id.* § 30–3–3(1). Without such a provision, a spouse lacking a separate income would be unable to meaningfully participate in divorce proceedings. Consequently, the moving spouse's need is a sine qua non of a subsection (1) award. *See*

6. At trial, Wife, not Husband, called Second Wife as a witness. Second Wife testified that her medical condition and spotty work history prevented her from sharing living expenses. The

only evidence adduced by Husband on this issue—that Second Wife had earned some money during a previous year—if anything favored Wife.

*Ostermiller v. Ostermiller*, 2008 UT App 249, ¶ 7, 190 P.3d 13 ("Simply put, if [a party] has no need for assistance, attorney fees may not be awarded under section 30–3–3(1)."), *aff'd in part and rev'd in part on other grounds*, 2010 UT 43, 233 P.3d 489.

¶ 30 In contrast, fee awards under subsection (2) serve no equalizing function but allow the moving party to collect fees unnecessarily incurred due to the other party's recalcitrance. *See Finlayson*, 874 P.2d at 850–51. In *Tribe v. Tribe*, 59 Utah 112, 202 P. 213 (1921), the supreme court discussed the rationale for awarding attorney fees when one party "refuses to comply with the requirements of [an order or] decree" such that the other party "is compelled to bring proceedings against" the offending party to ensure compliance with that order. *Id.* at 216. The court explained that the trial court may award reasonable attorney fees to the moving party so that he or she is not forced "to fritter away in costs and counsel fees" the amounts received under the order "by bringing repeated actions to enforce payment...." *Id.* The court may in its discretion award no fees or limited fees if it finds the offending party impecunious or enters in the record another reason for not awarding fees. *See* Utah Code Ann. § 30–3–3(2).

¶ 31 Here, the trial court conflated these two analyses. It ordered Husband to pay 15% of Wife's total attorney fees without distinguishing subsection (1) fees based on Wife's need and Husband's ability to pay from subsection (2) fees based on whether Wife substantially prevailed in enforcing previously entered orders. Rather, in determining Wife's "general award" of attorney fees, the court "look[ed] at the overall success of [Wife] on the important issues," including issues related to establishing court orders as well as enforcing them. The majority of Wife's legal work was for the purpose of establishing domestic orders, including those determining alimony, child support, and parent-time. To the extent Wife was establishing orders, her need was relevant but whether she substantially prevailed was not. On the other hand, Wife brought nine separate motions to enforce the court's prior orders. In every instance she prevailed. That fact was central to her recovery of attorney fees on those motions; her need was not, *see Finlayson*, 874 P.2d at 850 (stating that the trial court may disregard need in enforcement actions).

¶ 32 Accordingly, we reverse the trial court's determination of attorney fees and remand for further proceedings. On remand, if the trial court in its discretion orders payment of reasonable attorney fees pursuant to subsection (1), its order should be supported by findings relating to Wife's need, Husband's ability to pay, and the reasonableness of the fees. If the trial court in its discretion orders payment of reasonable attorney fees pursuant to subsection (2), its order should be supported by a finding that Wife substantially prevailed on the motions for which she seeks attorney fees. Finally, if the trial court chooses to award no fees or limited fees under subsection (2), its order should be supported by a finding that Husband is impecunious or a statement on the record of its reason for its decision.

### III. Child Support

¶ 33 Wife challenges the trial court's denial of child support in two separate circumstances. First, Wife contests the trial court's denial of her request for one-half of the work-related child care costs she incurred between the years 2003 and 2006. *See* Utah Code Ann. § 78B–12–102(7) (Supp.2009) (including child care costs in a child support award). Second, she contests the trial court's denial of retroactive child support for the period October 2001 through April 2002.

¶ 34 "Due to the equitable nature of child support proceedings, we accord substantial deference to the trial court's findings and give it considerable latitude in fashioning support orders." *Hill v. Hill*, 841 P.2d 722, 724 (Utah Ct.App.1992). However, "[d]etailed findings of fact and conclusions of law are necessary for this reviewing court to ensure that the trial court's discretionary determination of the ... child support award[ ] was rationally based." *Stevens v. Stevens*, 754 P.2d 952, 959 (Utah Ct.App. 1988). Because we conclude that the trial court did not make adequate findings regarding the first child support issue, and because

it failed to address the second, we reverse and remand for entry of appropriate findings.

## A. Nanny Care

¶ 35 Wife contends that the trial court erred by denying her request for one-half of her child care costs between 2003 and 2006. "The child support order shall require that each parent share equally the reasonable work-related child care expenses of the parents." Utah Code Ann. § 78B–12–214(1) (2008). Beginning in 2003, Wife spent approximately $400 per week for a full-time nanny. The trial court found this nanny care to be unreasonable. Accordingly, Husband was not required to pay an equal share of Wife's nanny care expenses. Rather, Husband was ordered to pay monthly child care costs of $340 per month during the school year and $500 per month during the summer. Wife challenges this ruling.

¶ 36 While we afford the trial court broad discretion in fashioning support awards, its "findings of fact must show that the court's judgment or decree follows logically from, and is supported by, the evidence." *Bakanowski v. Bakanowski,* 2003 UT App 357, ¶ 13, 80 P.3d 153 (internal quotation marks omitted).

¶ 37 In support of its ruling denying Wife's request for nanny care expenses from 2003 to 2006, the trial court entered the following findings in 2008:

> The parties' minor children are now 16, 13, 12, 9 and 7 years of age; the two older children are 19 and 24 years of age.... All of the children are in school full-time, so there is no need for full-time care during the school year, and only two of the children are still in elementary school. The older children certainly can be expected to help with the younger children ... [and] [t]he infrequency of [Wife's] work-related travel does not justify the request that [Husband] pay [Wife's requested

amount] per month for his share of the child-care expenses.

¶ 38 This finding indicates that in making its determination, the court relied primarily on the ages and corresponding needs of the children at the time the court issued its decree in 2008. In 2008, the children were all in school full-time. But Wife's claim for nanny care expenses related to the years 2003 through 2006. In 2003, the parties' youngest children were two and four years old. Accordingly, the decree denying nanny care for 2003 and other years when not all the children were in school full-time does not follow logically from the trial court's finding.[7] We therefore reverse the trial court's denial of Wife's child care expenses for the years 2003 through 2006 and remand for the trial court to enter necessary findings and, if appropriate in the exercise of its discretion, to revise its ruling.

## B. Retroactive Child Support

¶ 39 Wife submitted to the trial court a proposed memorandum decision. In it, she sought retroactive child support for the period October 2001, the date the parties permanently separated, to April 2002, the date Husband's support obligations began pursuant to the court's May 2002 order. The trial court declined to enter an order on this issue, stating, "As far as the court can determine, this matter has never been brought before the court and has not been reserved by [Wife]." On appeal, Wife challenges the trial court's refusal to rule on this issue. "Failure of the trial court to make findings on all material issues is reversible error unless the facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." *Acton v. Deliran,* 737 P.2d 996, 999 (Utah 1987) (internal quotation marks omitted).

¶ 40 Our review of the record indicates that Wife did raise the issue of child support for the period November 1, 2001, to April 1, 2002. In her Complaint for Divorce filed

---

7. The trial court also relied in part on the fact that Wife's work-related travel was infrequent, and it was undisputed that her travel obligations were as infrequent during the years 2003 to 2006 as they were in 2008. However, this fact alone does not provide detailed findings sufficient to support the ruling, particularly where the ruling was principally based on the children's ages and needs.

April 4, 2002, Wife requested that Husband's child support obligations begin November 1, 2001. In addition, the trial court, in its May 2002 order, ordered Husband's support obligations to begin April 1, 2002, and specifically noted, "[Wife] reserves the right to argue retroactivity of support." Since Wife requested support obligations to begin November 1, 2001, and the court ordered them to begin April 1, 2002, the order clearly contemplated November 1, 2001, to April 1, 2002, as the period pertaining to which Wife "reserve[d] the right to argue retroactivity of support." In addition, Wife adduced evidence at trial regarding Husband's failure to pay any support during this time period, presumably for the purpose of building an evidentiary basis for an award of retroactive support.

¶ 41 Because Wife's claim for retroactive support was pending before the trial court, the court was obligated to rule on it. We therefore remand for the trial court to address this claim on the merits.

## IV. Mortgage Payments

¶ 42 Finally, Wife contends that the trial court erred by refusing to order Husband to reimburse her for one-half of the mortgage payments she made on the marital home in the six-year period between the parties' separation and the trial. During the pendency of the divorce, Husband filed a bankruptcy petition in the United States Bankruptcy Court for the District of Utah. Apparently Wife did not file a motion to lift the automatic stay. Consequently, the trial court lacked jurisdiction over the marital residence. *See generally Rogers v. Rogers,* 671 P.2d 160, 163–64 (Utah 1983) (explaining how the interplay of sections 541 and 362 of Title 11 of the United States Code results in divesting a divorce court of jurisdiction to divide marital property after one spouse files for bankruptcy).

¶ 43 Recognizing that Husband's bankruptcy petition divested the trial court of jurisdiction to award equity in the home, Wife

sought reimbursement for at least one-half of her mortgage payments but requested that the court "characterize said judgment as family support and/or maintenance since providing a home for the children is part of supporting or maintaining the family." Wife argued in effect that not reimbursing her for amounts by which she increased the value of the home would be inequitable because Husband would "share in the benefit of [Wife's] contributions when the home is ultimately divided by the bankruptcy court." [8] The trial court rejected her request.

¶ 44 On appeal, Wife relies on *Jensen v. Jensen,* 2008 UT App 392, 197 P.3d 117. There, we upheld the trial court's ruling ordering the wife to repay her husband one-half of the mortgage payments he made on the parties' marital property for the period between separation and trial. *See id.* ¶ 27. This is precisely the order Wife sought here. However, *Jensen* did not involve a bankruptcy filing; the trial court there had jurisdiction over the marital home and was free to make whatever orders it determined were equitable under the circumstances. *See id.* ¶¶ 25–27. Here, any such division of the marital home must be made by the bankruptcy court.

¶ 45 We understand Wife's concern that if the bankruptcy court grants Husband and Wife each one-half of the equity in the marital home, Husband will reap a windfall to the extent Wife's post-divorce petition mortgage payments have increased equity in the home. Nevertheless, "[t]rial courts may exercise broad discretion in divorce matters so long as the decision is within the confines of legal precedence." *Childs v. Childs,* 967 P.2d 942, 944 (Utah Ct.App.1998). Given this broad discretion, "we presume the correctness of the court's decision absent manifest injustice or inequity that indicates a clear abuse of . . . discretion." *Id.* (omission in original) (internal quotation marks omitted).

¶ 46 Here, the trial court did not abuse its discretion by denying Wife reimbursement. The trial court denied her request in part

8. The United States Bankruptcy Court for the District of Utah has ruled that a non-filing spouse holding an undivided one-half interest in real property retains that interest after a petition is filed by the other spouse. *See In re Harrell,* No. 05–38736, 2007 WL 2986130, 2007 Bankr. Lexis 2154 (Bankr.D.Utah June 15, 2007) (mem.).

because Husband was already required to pay alimony and child support; therefore, granting her mortgage payments as an award of family support or maintenance "would, in effect, grant her judgment twice and force [Husband] to pay twice." In addition, the court found that Wife had received the benefit of living in the home during the period she made the payments. We cannot say that the court exceeded its broad discretion in denying Wife's request.

¶ 47 We therefore affirm the trial court's ruling denying Wife an award of family support and/or maintenance for payments she made on the parties' home mortgage.

### CONCLUSION

¶ 48 The trial court did not abuse its discretion in determining Husband's ability to pay or income for purposes of its order denying Wife alimony. Nor did the trial court abuse its discretion in denying Wife reimbursement for mortgage payments made on the marital home. However, the trial court erred in applying a unitary analysis to attorney fees incurred in establishing court orders and attorney fees incurred in enforcing court orders. We accordingly reverse the attorney fee award and remand for a redetermination of fees. We also remand for the trial court to revisit the issue of nanny care and to rule in the first instance on the issue of child support for the period October 1, 2001 to April 1, 2002.

¶ 49 Wife's request for attorney fees on appeal is denied.

¶ 50 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and RUSSELL W. BENCH, Senior Judge.