2015 UT App 241

# THE UTAH COURT OF APPEALS

KARINE RELLER,
Appellant,
*v.*
FRANCIS ARGENZIANO,
Appellee.

Opinion
No. 20140736-CA
Filed September 17, 2015

Third District Court, Salt Lake Department
The Honorable Su J. Chon
No. 094903937

Gregory W. Stevens, Attorney for Appellant

James A. McIntyre and Richard R. Golden, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES STEPHEN L. ROTH and JOHN A. PEARCE concurred.

CHRISTIANSEN, Judge:

¶1     Karine Feldman (formerly Karine Reller) appeals from the
trial court's Amended Supplemental Decree of Parentage and
Judgment. She challenges the trial court's order denying her
motion to amend her complaint to recover retroactive child
support from 2005 to 2009. In addition, Feldman claims that the
trial court abused its discretion by imputing income to Francis
Argenziano without first finding that he was voluntarily
underemployed and by declining to hold Argenziano in
contempt for failing to pay child support for January and
February 2013. We affirm.

BACKGROUND

¶2      In 2005, Feldman gave birth to a child while married to Micah Reller. Feldman and Reller divorced in 2006 via a default decree. *See Reller v. Reller*, 2012 UT App 323, ¶ 2, 291 P.3d 813. That divorce decree identified that the parties had one child during the marriage. *Id.* At the time the decree was entered, Feldman had sole physical custody of the child and Reller had visitation rights. *Id.* In 2007, Reller petitioned the court to modify the custody arrangement. *Id.* Feldman opposed the petition to modify, and filed her own petition to modify, "wherein she asserted for the first time that [Reller] was not actually the father of her child." *Id.* Feldman then sought to join Argenziano in the divorce case so that he could be adjudicated as the father of the child. *Id.* ¶ 3. Through genetic testing, Reller was excluded as the child's father. *Id.* In March 2009, the district court in the divorce case "entered a stipulated partial decree of divorce, effectively divorcing [Reller] and [Feldman] and setting forth findings adequate to rebut the parental presumption as to [Reller], excluding him as the father of the child born during the marriage." *Id.*

¶3      In September 2009, the State of Utah commenced a child-support and paternity action against Argenziano on behalf of Feldman. The complaint requested that child support be awarded both prospectively and retroactively from March 2009.

¶4      In September 2010, Feldman and Argenziano attempted to resolve the child-support issue by mutual agreement. In a written stipulation, Argenziano and Feldman agreed that Argenziano would pay Feldman "$26,000.00 representing 13 months of retroactive child support from July 1, 2009 to August 1, 2010."

¶5      The trial court declined to approve the stipulation because it was only a partial settlement and Feldman was not a party to the child-support case. In December 2010, the trial court ordered

that Feldman be substituted as the petitioner in the child-support case in place of the State, stating that the underlying complaint would remain.

¶6    After she was joined in the case, Feldman filed a motion for "Temporary Orders and an Order Enforcing the Settlement Agreement," seeking orders regarding child support, retroactive child support "pursuant to the parties' stipulated agreement," parent-time, and health insurance. A domestic relations commissioner held a hearing on the motion, entered temporary orders, and reserved for trial the issues of child support and retroactive child support. At a review hearing one month later, the commissioner recommended that Argenziano pay child support prospectively from November 2010 in the amount of $3,017.30 per month and reserved "any prior claims" for trial.

¶7    Following the commissioner's recommendation, the trial court denied Feldman's renewed motion to enforce the settlement agreement. Regarding child support, the court ordered Argenziano to pay Feldman child support in the amount recommended by the commissioner. The court based this determination on Feldman's imputed gross monthly income of $1,257.00 and Argenziano's adjusted gross monthly income for 2010 of $41,815.45. The court did not enter any orders regarding retroactive child support, stating that "the issue of whether or not the Respondent should be ordered to pay to Petitioner support prior to November 2010 is reserved for trial."

¶8    Argenziano's income changed significantly before trial. As a result, he moved to reduce his temporary support obligation. The court denied Argenziano's request to reduce his temporary child support from $3,017.30 to $920.00 based on his claimed change in income. The court did, however, reduce his temporary child support obligation to $2,724.00 based on credits for having a minor child in his home and medical insurance premiums for that minor child.

¶9     On November 18, 2012, Feldman's counsel sent an email to Argenziano's counsel, stating, "As I am sure you have assumed, our position will be for support from September, 2005, per the statute." Discovery closed on March 21, 2013. The parties filed their trial briefs on August 21, 2013. In her trial brief, Feldman stated,

> Utah Code Ann. § 78B-15-109 allows the Court to make the child support order retroactive four years prior to the filing of the petition. Here, the petition was filed on September 3, 2009. There is no reason not to require [Argenziano] to support his child as far back as the statute allows. Thus, the Court should make the support order retroactive to September 3, 2005.

We refer to Feldman's claim for retroactive child support extending back to 2005 as the "Retroactive Support Claim."

¶10     A pretrial hearing was held on August 28, 2013. At the pretrial hearing, Argenziano raised a number of evidentiary objections but did not object to the Retroactive Support Claim. The court then directed the parties to identify before trial any exhibits to which there were objections and concluded the hearing. On the morning of trial, Argenziano objected to the Retroactive Support Claim. Argenziano also objected to the admission of any tax returns for years predating the filing of the action because "they would not be relevant to child support." Argenziano claimed that the complaint, which sought retroactive child support only from March 2009 to September 2009, was "the basis [the parties have] litigated the entire lawsuit and now, in the trial brief for the first time, the issue of child support back to 2005 is being raised. That's improper and that denies [Argenziano] due process of law." In response, Feldman made an oral motion to amend the complaint, claiming that the petition was filed by the State, not Feldman, and that she "did not see [the complaint]." Argenziano then stated that, had

Feldman moved to amend her complaint to add the Retroactive Support Claim, he "would have objected" and "now to move to amend [the complaint] on the day of trial is certainly prejudicial to [Argenziano]." The court took the motion under advisement and told both parties that it would conditionally accept evidence relating to child support for the years 2005 through 2009 and would rule on the motion and evidence once it received supplemental briefing from the parties after trial. After receiving the supplemental briefing, the court denied the motion to amend, finding that it was untimely and prejudicial to Argenziano and that there was no justification for Feldman's delay in filing the motion.

¶11    In its findings of fact and conclusions of law entered after trial, the trial court imputed $6,443.33 in monthly income to Argenziano "[b]ased on all of the evidence, [the] uncertainty with respect to [Argenziano's] employment, and the [Bureau of Labor Statistics's] average median wage in the New York area" for financial specialists working in investment banking and securities dealing. The trial court also denied Feldman's request to hold Argenziano in contempt for failing to pay child support in January and February 2013 because Argenziano "did not have the ability to pay."

¶12    Feldman filed a motion for new trial, arguing, among other things, that the trial court erred by not treating the Retroactive Support Claim as having been tried by consent. The trial court denied the motion, explaining that it could not deem the Retroactive Support Claim to have been tried by consent, because Argenziano objected before trial to Feldman's attempt to try the issue. Feldman now appeals.

ISSUES AND STANDARDS OF REVIEW

¶13    Feldman argues that the trial court should have determined that the Retroactive Support Claim was tried by

express or implied consent pursuant to rule 15(b) of the Utah Rule of Civil Procedure. "We review for correctness a district court's determination that rule 15(b) is inapplicable." *McCollin v. J.D.F. Props., LLC*, 2014 UT App 75, ¶ 13, 324 P.3d 662.

¶14 Next, Feldman argues that by denying her motion to amend, the court "effectuated a waiver" of the Retroactive Support Claim in violation of Utah Code section 78B-12-109. Whether Utah Code section 78B-12-109 applies "is a matter of statutory interpretation, which presents a question of law." *See Vorher v. Henriod*, 2013 UT 10, ¶ 6, 297 P.3d 614 (citation and internal quotation marks omitted). We review the trial court's interpretation of the statute for correctness. *See id.* And we will not disturb a trial court's denial of a motion to amend pleadings absent an abuse of discretion. *See Fishbaugh v. Utah Power & Light*, 969 P.2d 403, 405 (Utah 1998).

¶15 Feldman claims that the court erred in imputing income to Argenziano "when it concluded, albeit implicitly, that Mr. Argenziano is not voluntarily underemployed" and that the court erred "as a matter of law when it imputed income to him based solely on general data from the [Bureau of Labor Statistics]." Because trial courts have broad discretion to award child support, "we will not disturb such decisions absent an abuse of discretion." *Roberts v. Roberts*, 2014 UT App 211, ¶ 7, 335 P.3d 378. "That means that 'as long as the court exercise[d] its discretion within the bounds and under the standards we have set and has supported its decision with adequate findings and conclusions,' we will not substitute our judgment for the trial court's." *Id.* (alteration in original) (quoting *Connell v. Connell*, 2010 UT App 139, ¶ 5, 233 P.3d 836).

¶16 Finally, Feldman argues that the court erred by declining to hold Argenziano in contempt for failing to pay child support in accordance with the trial court's temporary child-support order. We review the trial court's decision not to hold a party in

contempt for an abuse of discretion. *Gardner v. Gardner*, 2012 UT App 374, ¶ 14, 294 P.3d 600.


ANALYSIS

I. The Court Correctly Concluded That the Retroactive Support Claim Was Not Tried by Express or Implied Consent.

¶17   Feldman first argues that the trial court erred "when it failed to treat the issue of retroactive child support as having been tried by express or implied consent" pursuant to rule 15(b) of the Utah Rules of Civil Procedure. Feldman bases this argument on the trial court's "prior, repeated, specific reservation of the issue and the parties' prior, implicit consent to try the issue." Feldman contends that Argenziano implicitly consented to try the Retroactive Support Claim because Feldman raised the issue in her trial brief and Argenziano did not object to the Retroactive Support Claim until the morning of trial.

¶18   "When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Utah R. Civ. P. 15(b). "Such amendments of the pleadings as may be necessary . . . to raise these issues may be made upon motion of any party at any time, . . . but failure so to amend does not affect the result of the trial of these issues." *Id.* A finding of implied consent "depends on whether the parties recognized that an issue not presented by the pleadings entered the case at trial." *Keller v. Southwood N. Med. Pavilion, Inc.*, 959 P.2d 102, 105 (Utah 1998) (citation and internal quotation marks omitted). "A party may give implied consent when it does not object to the introduction of evidence at trial." *Id.; see also Zions First Nat'l Bank v. Rocky Mountain Irrigation, Inc.*, 795 P.2d 658, 663–64 (Utah 1990) (concluding that rule 15(b) requires "that the pleadings be conformed to the evidence presented at trial when no objection is made to the introduction of such evidence").

¶19  Here, Feldman first raised the Retroactive Support Claim in her trial brief.[1] Argenziano did not object to the Retroactive Support Claim at the pretrial hearing, but the morning of trial he objected to trying this issue. Counsel for Argenziano stated that he had not conducted discovery or prepared for the Retroactive Support Claim because the claim did not appear in the complaint. Counsel therefore objected to the admission of any evidence related to Argenziano's income for the years 2005 through 2008 because it "would not be relevant to child support." In light of Argenziano's objection, the court conditionally received the evidence related to the Retroactive Support Claim pending the court's resolution of Feldman's motion to amend and Argenziano's objection.

¶20  Given the course of these proceedings, we cannot agree with Feldman that the Retroactive Support Claim was tried by consent. Argenziano objected to the admission of any evidence related to the Retroactive Support Claim. While the trial court nevertheless received that evidence, it did so conditionally upon resolution of Feldman's motion and Argenziano's objection before and after trial. Because the evidence relating to the Retroactive Support Claim was not received without objection, we cannot conclude that the issue was tried by consent such that the pleadings were required to be "conformed to the evidence presented at trial" pursuant to rule 15(b). *See Zions First Nat'l Bank*, 795 P.2d at 663.

---

1. Feldman's counsel's November 2012 email to Argenziano's counsel stating that "[Feldman's] position will be for support from September, 2005, per the statute," arguably raised the Retroactive Support Claim somewhat earlier. Such a conclusion would not affect our analysis, however, because Argenziano objected to the claim and the related evidence once the issue arose at trial.

¶21 Feldman also argues that the Retroactive Support Claim was tried by consent because the trial court repeatedly reserved the issue for trial "without limitation." However, the court never unconditionally reserved the issue of child support for September 2005 through March 2009, the relevant period for the Retroactive Support Claim. The complaint sought retroactive child support only for March 2009 to September 2009. Nothing in the record suggests that the trial court understood Feldman's claim to encompass more than the relief sought in the complaint until Feldman filed her trial brief. And when, on the morning of trial, the trial court reserved the question of the Retroactive Support Claim until after trial, it did so in the face of Argenziano's objection to Feldman's claim for relief not sought in the complaint. Thus, the trial court's statements reserving "retroactive" child support or "any prior claims" for trial cannot reasonably be read as going beyond the claims set forth in the complaint, which requested child support only from March 2009 onward. Thus, even were we to accept Feldman's contention that the trial court itself could have "consented" to the trial of an issue by reserving it for trial, we would nevertheless conclude that the trial court did not do so here.

¶22 Accordingly, the trial court correctly determined that rule 15(b) was inapplicable because the Retroactive Support Claim was not tried by express or implied consent.[2]

---

2. Feldman also argues that the trial court "should have treated the reservation of retroactive child support as the law of the case." Under the law of the case doctrine, "a decision made on an issue during one stage of the case is binding in successive stages of the same litigation." *B.A.M. Dev., LLC v. Salt Lake County*, 2012 UT 26, ¶ 34, 282 P.3d 41 (citation and internal quotation marks omitted). By reserving the issue for later disposition, the trial court explicitly declined to render a decision on the issue of retroactive-child support in its pretrial orders.

(continued…)

## II. The Trial Court Did Not Abuse Its Discretion in Denying Feldman's Motion to Amend.

¶23   Second, Feldman claims that the trial court erred "as a matter of law by deciding that Ms. Feldman had waived her right to seek retroactive child support . . . based on the fact that a specific claim for it was not included in the initial Complaint filed by the State of Utah." Feldman argues that the trial court's denial of her oral motion to amend her complaint to include the Retroactive Support Claim on the morning of trial "effectuated a waiver of child support, absent a specific, written waiver, in contravention of [Utah Code section] 78B-12-109." We therefore first consider whether the trial court properly denied Feldman's motion to amend her complaint to include the Retroactive Support Claim. We then consider whether that denial "effectuated a waiver of child support."

¶24   Rule 15(a) of the Utah Rules of Civil Procedure states that, after the responsive pleadings have been filed, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." In ruling on a motion to amend, a trial court must weigh three factors: the timeliness of the motion, the justification for the delay, and the resulting prejudice to the responding party. *ASC Utah, Inc. v. Wolf Mountain Resort, LC*, 2013 UT 24, ¶ 26, 309 P.3d 201. We must give considerable deference to the trial court, "as it is best positioned to evaluate the motion to amend in the context of the scope and duration of the lawsuit." *Daniels v. Gamma W. Brachytherapy, LLC*, 2009 UT 66, ¶ 60, 221 P.3d 256 (citation and internal quotation marks omitted). We

---

(…continued)
Thus, there was no decision on the issue of retroactive-child support that could have implicated the law of the case doctrine until the trial court entered its post-trial ruling.

generally will uphold a trial court's denial of a motion to amend "where the amendment is sought late in the course of the litigation, where there is no adequate explanation for the delay, and where the movant was aware of the facts underlying the proposed amendment long before its filing." *Hill v. State Farm Mut. Auto. Ins. Co.*, 829 P.2d 142, 149 (Utah Ct. App. 1992) (citation and internal quotation marks omitted).

¶25 "[M]otions to amend are typically deemed untimely when they are filed in the advanced procedural stages of the litigation process, such as after the completion of discovery, [or] on the eve of a scheduled trial date." *Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶ 29, 87 P.3d 734. Additionally, "regardless of the procedural posture of the case, motions to amend have typically been deemed untimely when they were filed several years into the litigation." *Id.* ¶ 30; *see also Neztsosie v. Meyer*, 883 P.2d 920, 922 (Utah 1994) (concluding that the trial court's denial of a motion to amend filed three years after the complaint was not an abuse of discretion). This is because "the ongoing passage of time makes it increasingly difficult for the nonmoving party to effectively respond to the new allegations or claims." *Kelly*, 2004 UT App 44, ¶ 30. Additionally, the Utah Supreme Court has stated that when determining whether a motion to amend should be granted, the trial court must consider "whether the opposing side would be put to unavoidable prejudice by having an issue adjudicated for which he had not had time to prepare." *Kasco Servs. Corp. v. Benson*, 831 P.2d 86, 92 (Utah 1992) (citation and internal quotation marks omitted).

¶26 The State filed a complaint against Argenziano on September 3, 2009. In the complaint, the State requested that Argenziano be ordered to pay child support "[b]eginning March 2009." The complaint did not seek retroactive child support beyond March 2009. When Feldman was substituted as the petitioner in the case in place of the State in December 2010, the court stated that the underlying complaint would remain.

Feldman's trial counsel entered an appearance in March 2012 and remained Feldman's counsel for the remainder of the case. In November 2012, Feldman's counsel sent an email to Argenziano's counsel inquiring whether Argenziano had a "settlement proposal to make on back child support" and stating, "As I am sure you have assumed, our position will be for support from September, 2005, per the statute." But Feldman did not move to amend the complaint until the morning of trial, after Argenziano objected to the Retroactive Support Claim contained in Feldman's trial brief. Before filing her trial brief, Feldman had never identified the Retroactive Support Claim in any filing with the court, and she made no attempt to actually plead such a claim until the morning of trial, when she moved to amend her complaint.

¶27    The trial court found that Feldman's motion was untimely, that Feldman had failed to present sufficient justification for her delay, and that Argenziano would be prejudiced by the amendment. The trial court found the motion untimely because, by Feldman's "own statement, [she] knew in November 2012 that she wanted to request child support from September 2005. The parties stipulated to a scheduling order, and fact discovery expired on March 21, 2013," yet "[n]o motion to amend was filed at or before either time." The trial court found that Feldman's proffered reason for the delay—that she did not know what was in the complaint and could not read English—was not justified, because Feldman was represented by counsel. And based on the November 2012 email, the court found that Feldman and her counsel were aware that she intended to seek retroactive child support and "had ample time to move to amend the Complaint." Finally, the court found that Argenziano would be prejudiced by an amendment to the complaint on the morning of trial because "he conducted discovery based on the dates identified in the Complaint" and he "did not conduct discovery with respect to the back child support and would be prejudiced in presenting evidence at

trial." Accordingly, the court denied Feldman's motion to amend her complaint.

¶28 Even assuming that the November 2012 email from Feldman's counsel provided Argenziano with notice of Feldman's intent to seek retroactive child support back to September 2005, Feldman never moved to amend her claim until the morning of trial. At that point, the period for fact discovery had long expired and Argenziano had prepared for trial based on the claims in the complaint. Under Utah's pleading requirements, "'claims must . . . be restricted to the grounds set forth in the complaint.'" *Barton Woods Homeowners Ass'n, Inc. v. Stewart*, 2012 UT App 129, ¶ 11, 278 P.3d 615 (omission in original) (quoting *Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 31, 48 P.3d 895). Any assertions of unpleaded claims in emails or trial briefs "cannot remedy the failure to include them in an appropriate pleading." *Id.*

¶29 Having concluded that the motion to amend was properly denied, we next consider Feldman's argument that the denial of her motion to amend "effectuated a waiver of child support" in violation of Utah Code section 78B-12-109.[3] We conclude that the trial court's decision resulted in Feldman's forfeiture of her Retroactive Support Claim, rather than a waiver of that claim, and that Utah Code section 78B-12-109 is therefore not implicated.

¶30 Though principles of waiver and forfeiture are "often used interchangeably," "the two concepts are technically distinct." *Ralphs v. McClellan*, 2014 UT 36, ¶ 24 n.3, 337 P.3d 230

---

3. Utah Code section 78B-12-109 states, "Waiver and estoppel shall apply only to the custodial parent when there is no order already established by a tribunal" and only then if the custodial parent specifically waives the support in writing. Utah Code Ann. § 78B-12-109(1) (LexisNexis 2012).

(citation and internal quotation marks omitted). "Forfeiture 'is the failure to make the timely assertion of a right,' whereas waiver 'is the intentional relinquishment or abandonment of a known right.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

¶31     The question at issue here is thus, technically, a matter of forfeiture rather than waiver. The trial court did not find that Feldman or her child had waived the right to retroactive child support from Argenziano. Instead, the trial court found that Feldman failed to amend her complaint pursuant to rule 15 of the Utah Rules of Civil Procedure. By failing to timely move to amend her complaint, Feldman effectively forfeited any claim for retroactive child support for the period of 2005 to March 2009.[4] Because Utah Code section 78B-12-109 imposes limitations on the waiver, but not the forfeiture, of child-support claims, we conclude that the statute was not implicated by the trial court's denial of Feldman's motion to amend. Accordingly, the trial court did not abuse its discretion by denying Feldman's motion to amend her complaint on the morning of trial.

### III. The Trial Court Did Not Abuse Its Discretion When It Imputed Income to Argenziano.

¶32     Next, Feldman argues that to impute income to Argenziano, the trial court was required to first determine if Argenziano was voluntarily unemployed or underemployed and then determine how much income should be imputed. She argues that the trial court "abused its discretion and reached a clearly erroneous[] finding when it concluded, albeit implicitly, that Mr. Argenziano [was] not voluntarily underemployed" and that the court erred "as a matter of law when it imputed income

---

4. We do not address the issue of whether Feldman was legally entitled to seek retroactive child support beginning in September 2005.

to him based solely on general data from the [Bureau of Labor Statistics].”

¶33    Before imputing income to a parent, the trial court must “enter[] findings of fact as to the evidentiary basis for the imputation.” Utah Code Ann. § 78B-12-203(7)(a) (LexisNexis 2008). Though voluntary unemployment or underemployment may be relevant when considering whether a party is “concealing income or . . . shirking in his [or her] efforts to earn income,” a finding of voluntary unemployment or underemployment is not a prerequisite to imputing income.[5] *See Rayner v. Rayner*, 2013 UT App 269, ¶ 10 & n.4, 316 P.3d 455 (citation and internal quotation marks omitted); *Busche v. Busche*, 2012 UT App 16, ¶ 16, 272 P.3d 748. The focus of the imputation analysis is therefore on the “detailed findings of fact necessary to support a decision to impute income” rather than the “ultimate fact or . . . legal conclusion” of voluntary unemployment or underemployment. *Cf. Rayner*, 2013 UT App 269, ¶ 10.

¶34    Despite the trial court’s later concession that it “did not find [Argenziano] to be underemployed and perhaps used the

---

5. A previous version of Utah Code section 78B-12-203 allowed imputation of income in contested cases only after “a hearing [was] held and a finding made that the parent [was] voluntarily unemployed or underemployed.” Utah Code Ann. § 78-45-7.5(7)(a) (LexisNexis 2002). That section was amended in 2007, replacing the requirement that a parent be found voluntarily unemployed or underemployed with the general requirement that the trial court identify the evidentiary basis for the decision. *See Rayner v. Rayner*, 2013 UT App 269, ¶ 10 & n.4, 316 P.3d 455. *Compare* Utah Code Ann. § 78-45-7.5(7)(a) (LexisNexis 2002), *with id.* § 78-45-7.5(7)(a) (Supp. 2007). The statute was then renumbered in 2008 as section 78B-12-203. *Id.* § 78B-12-203 (2008).

word 'impute' incorrectly," the substance of the court's order was in fact an imputation of income. The trial court entered detailed findings of fact regarding Argenziano's employment history and salary between 2006 and 2013. The court considered the testimony given at trial regarding each of Argenziano's jobs and his reasons for leaving, as well as his periods of unemployment, and found Argenziano's testimony credible. The court then considered Argenziano's work history and occupational qualifications. The court found that Argenziano's employment opportunities with high-paying brokerage firms were limited due to his educational background. The court then considered the earning potential reported by the Bureau of Labor Statistics (the BLS) for Argenziano's job description.

¶35    In explaining its findings, the court stated that Feldman had failed to "provide any evidence or expert testimony rebutting [or] regarding [Argenziano's] testimony, his profession, his employment opportunities, his alleged voluntary underemployment, employment situation for persons similarly situated to [Argenziano], the pay rates available at boutique firms, and any job description and duties for a managing director." Based on the findings regarding Argenziano's employment potential and probable earnings, the trial court imputed to Argenziano an income in the amount of $77,320 per year, or $6,443.33 per month.

¶36    Given the trial court's detailed findings and the text of the relevant statute, we conclude that the trial court was not required to make a finding that Argenziano was voluntarily unemployed before imputing income to him. *See id.* ¶ 10 & n.4. Moreover, Feldman has not explained why a finding of voluntary unemployment would have made any difference to the trial court's decision to impute income to Argenziano. A harmless error is "'an error that is sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings.'" *Covey v. Covey*, 2003

UT App 380, ¶ 21, 80 P.3d 553 (quoting *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 796 (Utah 1991)). If the trial court had found that Argenziano was voluntarily underemployed, that finding could only have provided additional support for the trial court's decision to impute income to Argenziano. Thus, although the trial court imputed income to Argenziano without finding that he was voluntarily underemployed, any error in declining to make that finding was harmless.[6]

¶37    We next consider Feldman's claim that the trial court improperly relied "solely" on data from the BLS in calculating the amount of income to impute to Argenziano. Utah Code section 78B-12-203(7)(b) states,

---

6. Even if we were to assume that the trial court implicitly found that Argenziano was voluntarily underemployed because he was not "forced" to resign from his employment in 2011 but rather resigned voluntarily, the result reached by the trial court would still be a matter of discretion. "[A] finding of voluntary underemployment does not require a court to impute the higher income; it merely allows it to do so." *Connell v. Connell*, 2010 UT App 139, ¶ 17, 233 P.3d 836; *see also Hill v. Hill*, 869 P.2d 963, 964–65 (Utah Ct. App. 1994) (stating that a court *may* impute income if it has made a finding that a party is voluntarily unemployed or underemployed). "Thus, the court maintains its broad discretion to select an appropriate method of assessing a spouse's income." *Connell*, 2010 UT App 139, ¶ 17 (citation and internal quotation marks omitted). The trial court imputed an income to Argenziano based on his occupational qualifications, his previous employment, and the prevailing earnings of similar persons, without finding that Argenziano was voluntarily underemployed. Even had the trial court found that Argenziano was voluntarily underemployed, Feldman has failed to explain how such a finding would have altered the trial court's ultimate imputation of income.

> If income is imputed to a parent, the income shall be based upon employment potential and probable earnings as derived from employment opportunities, work history, occupation qualifications, and prevailing earnings for persons of similar backgrounds in the community, or the median earning for persons in the same occupation in the same geographical area as found in the statistics maintained by the Bureau of Labor Statistics.

Utah Code Ann. § 78B-12-203(7)(b) (LexisNexis 2008).

¶38    First, we disagree that the trial court's calculation of Argenziano's imputed income was based "solely on general data from the BLS." The trial court considered Argenziano's work history and his occupational qualifications, finding that he did not have employment opportunities with larger brokerage firms. The court then considered the BLS information provided by both parties. The court stated that Feldman had failed to "provide any evidence or expert testimony rebutting [or] regarding [Argenziano's] testimony, his profession, his employment opportunities, his alleged voluntary underemployment, employment situation for persons similarly situated to [Argenziano], the pay rates available at boutique firms, and any job description and duties for a managing director." The court also found credible Argenziano's testimony regarding his employment. Based on the evidence presented at trial, the court relied on the BLS data as a guide to impute income to Argenziano.

¶39    The trial court determined that "[i]n totality, . . . the BLS figure was an appropriate means in determining support payments." Given the trial court's findings relating to the other imputation factors, we see no abuse of discretion in the trial court's use of the BLS data to arrive at an appropriate income. The trial court relied on Argenziano's testimony regarding his previous and current employment, his wife's testimony, and the

BLS information in arriving at the imputed income amount. Relying on this evidence, the court found that the recession in 2008 "had a significant effect on the brokerage industry" and that "many of [Argenziano's] friends lost their jobs in the same industry during the recession and had not found replacement jobs as a result." The court also found that Argenziano "was impacted by . . . the recession."

¶40    Despite these findings, Feldman argues that the court should have used Argenziano's historical income to impute income to Argenziano because "his historical income provides the best evidence of his earning capacity." Yet Feldman has failed to demonstrate how, in light of the findings made by the court, Argenziano's historical income provides a better basis for calculating Argenziano's earning potential than the trial court's detailed analysis. Feldman also failed to provide the court with any evidence or expert testimony that Argenziano could obtain a job paying a salary similar to his historical income. The court therefore properly relied on Argenziano's testimony, his current job placement, and the BLS data to impute an income of $77,320, or $6,443.33 per month. Feldman has failed to convince us that the court abused its discretion in calculating Argenziano's imputed income.

### IV. The Trial Court Did Not Abuse Its Discretion in Declining to Find Argenziano in Contempt for Failure to Comply with the Temporary Child Support Order.

¶41    Finally, Feldman argues that the court erred by declining to hold Argenziano in contempt for failing to pay child support in January and February 2013. "'Under Utah law, in order to prove contempt for failure to comply with a court order it must be shown that the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so.'" *Homeyer v. Stagg & Assocs.* (*In re Interest of Cannatella*), 2006 UT App 89, ¶ 6, 132 P.3d 684 (*Von Hake v. Thomas*, 759 P.2d 1162, 1172 (Utah 1988)).

¶42    The court found that Argenziano knew both that there was a child-support order and that he was required to pay child support for January and February 2013. However, the trial court found that Argenziano did not have the ability to pay. Argenziano testified that he was unemployed in November and December 2012, that he was displaced by Hurricane Sandy for several weeks, and that he had another child born around that time. Argenziano testified that in January 2013, he began to work with a new company but received no income other than COBRA insurance premiums, which had been paid by another employer. The court found credible his testimony "regarding the change in the economy, the impact on the financial services industry, his loss of jobs and income, and his 2013 income year to date." Because of his inability to pay, the court declined to hold Argenziano in contempt for failing to pay the child support he owed to Feldman.

¶43    Feldman does not challenge the trial court's finding that Argenziano lacked the ability to comply with the child-support order. Rather, she simply argues that based on his decision to take a job where he earned less money, "his failure to satisfy his child support obligation was clearly intentional." But even if we agreed with Feldman, the trial court's unchallenged finding that Argenziano lacked the means to comply with the child-support order precludes a finding of contempt. *See id.*

¶44    In sum, based on the evidence presented at trial and the court's finding that Argenziano's testimony was credible, the trial court found that Argenziano did not have the ability to pay child support in January and February 2013. Feldman has not demonstrated that this finding was erroneous. We therefore conclude that the trial court did not abuse its discretion in declining to hold Argenziano in contempt.

## CONCLUSION

¶45   The trial court correctly determined that the Retroactive Support Claim was not tried by express or implied consent. The trial court did not abuse its discretion in denying Feldman's motion to amend her complaint to include the Retroactive Support Claim, in imputing income to Argenziano, or in declining to hold Argenziano in contempt. Accordingly, we affirm.

_____