2014 UT App 233

# THE UTAH COURT OF APPEALS

JAMIE WIDDISON,
Petitioner and Appellee,
*v.*
JANAE A. WIDDISON,
Respondent and Appellant.

Memorandum Decision
No. 20130464-CA
Filed October 2, 2014

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 034903241

Janae A. Widdison, Appellant Pro Se[1]

Suzanne Marelius, Attorney for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Memorandum
Decision, in which JUDGE MICHELE M. CHRISTIANSEN and SENIOR
JUDGE PAMELA T. GREENWOOD concurred.[2]

VOROS, Judge:

¶1      Janae A. Kirkham (Wife) and Jamie Widdison (Husband) divorced in 2003.[3] Husband petitioned to modify the divorce decree, arguing in part that he should be allowed to claim the tax

---

1. Larry A. Kirkham filed an entry of appearance on behalf of Appellant after this matter was submitted to the court for disposition.

2. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

3. Though Wife no longer uses the last name Widdison, we retain the case name *Widdison v. Widdison* here for consistency with lower court proceedings.

exemption for the couple's youngest child. The parties met with the domestic commissioner in his chambers. That conversation does not appear in the record. But the minute entry summarizing the meeting states that Wife refused to agree to the modification, that she "had no explanation for her position, particularly where it would cost her nothing," and that Husband's modification requests appeared "imminently capable of settlement but for [Wife's] inexplicable position."

¶2 After a half-day trial, the trial court issued findings and signed Husband's proposed modification order. The order awarded Husband the tax exemption for the youngest child for 2009, 2010, 2011, and 2012 and gave Husband the right to buy Wife's use of the exemption in 2013. The trial court directed Wife "to file the amended tax returns prepared by [Husband] for those years." The order also crafted a new system for determining which parent would provide health insurance for the youngest child. The trial court also found that Wife's "continued opposition [to the proposed modification] was unreasonable" and thus awarded Husband attorney fees.

¶3 Wife filed a thirteen-page written objection to the trial court's findings. Her objection contains, by our count, seventy-two entries alleging errors, omissions, and inconsistencies in the trial court's findings. Wife objected to many findings that were essential to the trial court's conclusions. For example, Wife disputed the court's characterization of her employment and salary, Husband's salary, and the cost of Husband's medical insurance. Wife also objected to the trial court's finding that she "has medical benefits available for herself and dependents at no cost from the healthcare clinic where she works." The trial court entered its findings as proposed. A handwritten note on the final page of the findings reads, "The court has considered and hereby overrules [Wife's] objections to the foregoing findings of fact and conclusions of law."

¶4 Wife appeals from the trial court's findings and from the modification order. We conclude that the trial court's findings do not adequately support the decision to award Husband the tax

exemptions or its decision to modify the original decree's health-insurance provisions. We therefore vacate the trial court's order with respect to the tax exemption and health-insurance issues and remand for further proceedings. We also conclude that Wife's opposition to the proposed modification was not unreasonable. Accordingly, we also vacate the trial court's award of attorney fees.

## I. Tax Exemptions

¶5     Wife contends that the trial court erred by modifying the divorce decree to allow Husband to claim a tax exemption for their youngest child. Wife argues that the trial court made no factual findings to support its conclusion that Husband "would realize a greater benefit from the exemption" than Wife would. Husband responds that "changed circumstances and equities" justified the modification. Husband also maintains that Wife "could not show that she would suffer financial harm" from the modification, because the ruling prescribed that "she would be fully indemnified" for any losses due to the exemption shift.

¶6     The Utah Rules of Civil Procedure require that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon." Utah R. Civ. P. 52(a). A trial court's findings "should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Rucker v. Dalton*, 598 P.2d 1336, 1338 (Utah 1979). When a trial court fails to make findings on a material issue, we assume the court "found them in accord with its decision, and we affirm the decision if from the evidence it would be reasonable to find facts to support it." *State v. Ramirez*, 817 P.2d 774, 787 (Utah 1991) (citation and internal quotation marks omitted). But we will vacate for further findings when "the ambiguity of the facts makes this assumption unreasonable." *Id.* at 788.

¶7     At trial, Husband's counsel asked Wife, "[D]o you think if we can shift the exemption to [Husband] and not hurt you a bit,

that would be a good idea?" Wife responded, "I think [shifting the exemption to Husband] would hurt me a lot because of the different exemptions that I take." Wife specifically raised three tax issues that she felt Husband's proposal failed to address—the Child Tax Credit, the Earned Income Credit, and the head-of-household designation:

> If I [retain the exemption], then of course I get the child tax credit, along with the earned income credit, and I get to file as head of household; and the benefit comes back into the house so it also benefits the minor child. If [Husband] takes [the exemption], then I can no longer file head of household. So that changes my tax bracket or the tax that I owe, because I would be filing single, which is the highest tax bracket there is.

The trial court made no findings on these additional possible tax burdens. Instead, the trial court's amended order of modification requires Husband to "pay any difference in taxes owed by [Wife] resulting from the shifting of the exemption for these years." The trial court's findings address the tax consequences of the exemption in a single sentence: "[Husband] would realize a greater benefit from the exemption for [2009, 2010, and 2011] than [Wife]."

¶8      Wife submitted her original tax returns during discovery. At trial, Husband testified that he provided these returns to a tax-preparation company to use in preparing modified returns for Wife for 2009, 2010, and 2011, thus disclosing the content of the returns. The object apparently was to demonstrate that allowing Husband to claim the exemptions would result in a lower total tax liability. Wife argues that Husband's preparation and submission of her amended returns without her signed consent violated the Internal Revenue Code. *See* 26 U.S.C. §§ 6103, 6713, 7216 (2012); *see also* Internal Revenue Serv., *Revenue Procedure 2008-35* (July 21, 2008), http://www.irs.gov/irb/2008-29_IRB/ar13.html (explaining that generally "a taxpayer's consent to each separate disclosure or use

of tax return information must be contained on a separate written document").[4]

¶9 Those concerns aside, the trial court's findings on the tax-exemption issue are insufficient. As Wife indicated, the tax implications of the exemption shift described in the trial court's modification may be complex. If a taxpayer "qualif[ies] to file as head of household," her "tax rate usually will be lower than the rates for single or married filing separately." Internal Revenue Serv., Dep't of the Treasury, *Publication 501: Exemptions, Standard Deduction, and Filing Information*, 8 (2013), *available at* http://irs.gov/pub/irs-pdf/p501.pdf. But a taxpayer may file as head of household only if a "qualifying person lived with [her] in the home for more than half the year." *Id.* Though a child of divorced parents is typically "the qualifying child of the custodial parent," in certain circumstances "the child will be treated as the qualifying child of the non-custodial parent." *Id.* at 14. Wife expressed concern that the exemption shift would jeopardize her head-of-household status, which in turn could trigger an IRS audit and subject her to fines. The trial court's findings do not address these concerns.[5] Instead, it responded to these concerns by assuring Wife that Husband would pay any tax difference for the years in question.

---

4. Wife also asserts that she refused to sign the modified returns and that she had "never been given notice [of] the actual signing of these forms . . . , but knows through communicating with the IRS [that her modified returns] were filed with [Husband's modified returns]." If this allegation is true, we note the impropriety—and possible illegality—of filing Wife's amended returns without her signed consent.

5. The trial court's findings also left unresolved Wife's concerns about the loss of the Earned Income Credit and the Child Tax Credit. *See* Internal Revenue Serv., Dep't of the Treasury, *Publication 596: Earned Income Credit (EIC)* (2013), *available at* http://irs.gov/pub/irs-pdf/p596.pdf; Dep't of the Treasury, *Publication 972: Child Tax Credit* (2013), *available at* http://irs.gov/pub/irs-pdf/p972.pdf.

¶10    But Wife's unresolved questions concerning the actual tax consequences of her filing amended returns place that assurance in doubt. Even if the modified tax returns that Husband prepared for Wife correctly calculated the tax difference due to the exemption shift, Husband's obligation to pay Wife the difference would not protect Wife against the possibility of an audit or fines. In short, we conclude that the tax consequences of the exemption shift may well be more complex than Husband's questioning or the court's findings reflect. The trial court's findings do not contain "enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Rucker*, 598 P.2d at 1338. We therefore vacate this portion of the trial court's order and remand for further findings.

## II. Health Insurance

¶11    Wife next contends that the trial court failed to adequately address the issue of health insurance in its amended order. Wife argues that the Widdisons' original divorce decree required Husband to maintain health-insurance coverage and that the trial court erred by neglecting to make findings on Husband's failure to do so.

¶12    The Widdisons' original divorce decree required Husband to "maintain medical and dental insurance for the benefit of the children as long as it is available through his employment at a reasonable cost." The decree deducted Wife's share of the children's health-insurance premium from Husband's child-support obligation.

¶13    At trial, Husband stated that after hearing from Wife's attorney that Wife could obtain health insurance at no cost through her employer, he removed their youngest child from his health-insurance plan. The record gives no indication that Husband's child-support obligation was adjusted to remove the health-insurance deduction. In short, it appears that Husband continued to offset Wife's insurance-premium contribution against his child-support obligation even though Wife, not Husband, provided the health insurance.

¶14　The trial court's findings provide a plan for Husband and Wife going forward. The court ordered Husband and Wife "to make full, complete disclosure by March 1st of every year of all information concerning the availability of health and dental benefits available for the [dependent] child for the next year." Husband and Wife are then required to "jointly determine which parent has the most affordable and adequate coverage for the minor child and that parent will maintain the coverage for that insurance year." But the findings do not address Husband's removal of their youngest child from his health-insurance plan. Furthermore, the findings do not indicate whether Husband will be required to compensate Wife for the corresponding underpayment of child support during the period in which their youngest child relied on Mother's health-insurance benefits.

¶15　Husband acknowledged removing their youngest child from his health-insurance plan, an apparent violation of the original divorce decree. The trial court failed to address Wife's arguments with respect to this issue. Because the "ambiguity of the facts" makes it unreasonable to assume that the trial court found the facts in accord with its decision, the court's failure to make findings on this issue constitutes reversible error. *See Ramirez*, 817 P.2d at 788. We vacate the trial court's divorce-decree modifications with respect to health-insurance coverage and remand to allow the trial court to make additional findings on this issue.

### III. Attorney Fees

¶16　Finally, Wife contends that the trial court abused its discretion by awarding Husband attorney fees. Husband responds that the trial court's attorney-fee award "was correct and must be affirmed."

¶17　Under Utah law, a prevailing party generally cannot recover attorney fees "unless authorized by statute or contract." *Faust v. KAI Techs., Inc.*, 2000 UT 82, ¶ 17, 15 P.3d 1266. The application of a statute to the facts "presents a mixed question of fact and law." *Olsen v. Olsen*, 2007 UT App 296, ¶ 7, 169 P.3d 765 (citation and internal quotation marks omitted). We review the trial court's

"findings for clear error and its conclusions of law for correctness, affording the court some discretion in applying the law to the facts." *Id.* (citation and internal quotation marks omitted).

¶18   Utah Code section 30-3-3 allows trial courts to award attorney fees in divorce and modification proceedings. *See* Utah Code Ann. § 30-3-3 (LexisNexis 2013). The relevant provision states, "[I]n any action to establish an order . . . in a domestic case, the court may order a party to pay the . . . attorney fees . . . of the other party to enable the other party to prosecute or defend the action." *Id.* § 30-3-3(1). But attorney-fee awards under subsection (1) "must be based on the usual factors of need, ability to pay, and reasonableness." *Connell v. Connell*, 2010 UT App 139, ¶ 28, 233 P.3d 836; *see also Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 49, 176 P.3d 476. Although the decision to award attorney fees in domestic actions generally falls within the "trial court's sound discretion," the "[f]ailure to consider these factors is grounds for reversal on the fee issue." *Wilde v. Wilde*, 969 P.2d 438, 444 (Utah Ct. App. 1998).

¶19   Here, the trial court found that "the Domestic Relations Commissioner was correct . . . that the case should have been settled" prior to trial and that Wife's "continued opposition [to Husband's proposed modification] was unreasonable." After concluding that Husband "ha[d] substantially prevailed on all disputed issues," the trial court awarded Husband all "fees and charges incurred from May 1, 2012 forward." However, the ambiguities attending shifting the tax exemption, explained above, cast doubt on the conclusion that Wife's "continued opposition was unreasonable." The financial impact of the exemption shift may be more complex than Husband, the commissioner, and the trial court indicated. And even if the exemption shift were financially neutral, Wife's consideration of other factors, such as the stress and inconvenience of a possible IRS audit, makes her "continued opposition" at least reasonable.

¶20   Moreover, the record does not reflect that the trial court considered the "usual factors" of Husband's need, Wife's ability to pay, and the reasonableness of his fee request. *See Connell*, 2010 UT

App 139, ¶ 28; *Wilde*, 969 P.2d at 444. We therefore vacate the trial court's attorney-fee award and remand for further considerations in light of the foregoing.

¶21    In summary, we vacate the trial court's award of attorney fees. We also vacate the trial court's modification order with respect to the tax-exemption shift and health insurance and remand to allow the trial court to enter additional findings on these issues.

———————