2018 UT App 75

# THE UTAH COURT OF APPEALS

SHANNON OLIVIA GERWE,
Appellee,
*v.*
BRIAN SCOTT GERWE,
Appellant.

Opinion
No. 20160117-CA
Filed April 26, 2018

Second District Court, Farmington Department
The Honorable Thomas L. Kay
No. 144700123

Andrew G. Deiss, Brent A. Orozco, and Diana F.
Bradley, Attorneys for Appellant

Russell Yauney, Attorney for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which JUDGES
KATE A. TOOMEY and DAVID N. MORTENSEN concurred.

HAGEN, Judge:

¶1     Brian Scott Gerwe (Husband) challenges the district
court's order setting aside a postnuptial agreement (the
Postnuptial Agreement) Husband entered into with Shannon
Olivia Gerwe (Wife) as well as various findings of fact and
conclusions of law associated with the court's divorce decree.
We affirm.

## BACKGROUND

¶2     In January 2014, Wife petitioned for divorce from
Husband. On June 25, 2014, the parties entered into the
Postnuptial Agreement, which divided the parties' assets and set
forth their financial obligations. In August 2014, Wife moved the

court to set aside the Postnuptial Agreement on grounds that Husband fraudulently induced her to sign it.

¶3     Following an evidentiary hearing, the court granted Wife's motion. It found that Husband had induced Wife to sign the Postnuptial Agreement in hopes of reconciliation when Husband "had no intent to reconcile with" Wife. This was evidenced by (1) the "shortness of time between the signing of the document and the request to move forward with the divorce," (2) the "text messages from [Husband] sent to [Wife] almost immediately after the document was signed," and (3) the fact that the "six factors [Husband] cited to about why he did not want to get back together, were not valid, and were only used as an attempt to justify his actions."

¶4     After a bench trial, the district court entered findings of fact and conclusions of law in support of the divorce decree. Relevant to this appeal, the court found that: (1) Wife was entitled to half the marital funds in a brokerage account but was not responsible for a loan Husband claimed had been used to fund the account; (2) the total value of personal property remaining in Husband's possession was $48,000, and half of that value should be awarded to Wife; and (3) based on Husband's current gross income is $9,373 per month, he was required to pay Wife child support in the amount of $671 per month and alimony in the amount of $1,000 per month.

¶5     Husband now appeals the court's order to set aside the Postnuptial Agreement as well as various findings of fact and conclusions of law associated with the divorce decree.

ISSUES AND STANDARDS OF REVIEW

¶6     Husband raises four issues on appeal. First, Husband argues that the district court failed to utilize the "clear and convincing" evidentiary standard when it set aside the Postnuptial Agreement and failed to make sufficient findings on

the essential elements of fraudulent inducement. Husband acknowledges that he did not raise this issue below and would normally be barred from asserting it on appeal. He asks this court to reach the merits of his argument under the plain error exception to the preservation rule.[1] "The party seeking the benefit of the plain error exception must demonstrate that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome" for the appellant. *Meadow Valley Contractors, Inc. v. State Dep't of Transpo.*, 2011 UT 35, ¶ 17, 266 P.3d 671 (quotation simplified). To the extent Husband challenges the sufficiency of the evidence supporting a finding of fraudulent inducement, "we will not set aside a [district] court's factual findings 'unless clearly erroneous,' giving 'due regard to the [district] court's opportunity to judge the credibility of the witnesses.'" *Shuman v. Shuman*, 2017 UT App 192, ¶ 3, 406 P.3d 258 (quoting Utah R. Civ. P. 52(a)(4)).

¶7 Second, Husband contends that the district court erred when it awarded each party half the marital funds in the brokerage account but allocated to him the entirety of a loan he claimed was used to fund the account. "In a divorce action, there is no fixed formula upon which to determine a division of debts. However, such allocation must be based upon adequate factual findings which ruling we will not disturb absent an abuse of

---

1. As this court has previously observed, "[o]ur supreme court recently noted the 'ongoing debate about the propriety of civil plain error review,' but did not take the opportunity to resolve that debate for purposes of Utah law." *Frugal Flamingo Quick Stop v. Farm Bureau Mutual Ins. Co.*, 2018 UT App 41, ¶ 10 n.3 (quoting *Utah Stream Access Coal. v. Orange St. Dev.*, 2017 UT 82, ¶ 14 n.2). We decline to resolve this issue here because the appellee has not challenged the applicability of plain error review.

discretion." *Rehn v. Rehn*, 1999 UT App 41, ¶ 19, 974 P.2d 306 (quotation simplified).

¶8     Third, Husband contends that the district court abused its discretion in distributing the value of the parties' personal property. "[D]istrict courts have considerable discretion concerning property distribution in a divorce . . . [and] we will uphold the decision of the district court . . . unless a clear and prejudicial abuse of discretion is demonstrated." *Dahl v. Dahl*, 2015 UT 79, ¶ 119 (quotation simplified).

¶9     Finally, Husband contends that the district court abused its discretion by failing to calculate alimony and child support based on his projected salary. A district court's award of alimony is reviewed for abuse of discretion. *Bakanowski v. Bakanowski*, 2003 UT App 357, ¶ 7, 80 P.3d 153.

ANALYSIS

I. Fraudulent Inducement

¶10     Husband argues that the district court committed plain error when it set aside the Postnuptial Agreement because it failed to use the "clear and convincing" evidentiary standard. Husband also asserts that the court failed to make sufficient findings on the essential elements of fraudulent inducement and that the evidence was insufficient to support such findings.

¶11     To prevail on a claim of fraudulent inducement, the party alleging fraud "must present clear and convincing evidence" of the following:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base

such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Daines v. Vincent*, 2008 UT 51, ¶ 38, 190 P.3d 1269 (quotation simplified). "[F]or a matter to be clear and convincing to a particular mind it must at least have reached the point where there remains no serious or substantial doubt as to the correctness of the conclusion." *Greener v. Greener*, 212 P.2d 194, 205 (Utah 1949).

¶12   On appeal, Husband has not established that the district court committed plain error in ruling that Wife had proven fraudulent inducement. "The burden of showing error is on the party who seeks to upset the judgment." *State v. Jones*, 657 P.2d 1263, 1267 (Utah 1982). Accordingly, "[i]n the absence of record evidence to the contrary, we assume regularity in the proceedings below, and affirm the judgment." *Id.*

¶13   Although the district court did not expressly state that Wife presented clear and convincing evidence of fraudulent inducement, it never suggested that a lower standard of proof applied. A reviewing court "will not presume from a silent record that the court applied an incorrect legal standard" but "must presume the regularity and validity of the [district] court's proceedings, and that it applied the correct legal standard, in the absence of evidence to the contrary." *State v. Cash*, 951 N.E.2d 486, 492 (Ohio Ct. App. 2011); *see also Granville Med. Center v. Tipton*, 586 S.E.2d 791, 795 (N.C. Ct. App. 2003) (rejecting claim that district court applied the wrong legal standard below because "[w]here the record is silent on a particular point, we presume that the trial court acted correctly"); *Committee for Responsible Planning v. City of Indian Wells*, 257 Cal. Rptr. 635, 638 (Cal. Ct. App. 1989) ("In the absence of any contrary indication in the record, we therefore assume

that the trial court followed the correct legal standard in ruling on the motion."). Because nothing in the record suggests that the court applied something less than the clear and convincing standard,[2] Husband cannot establish error.

¶14   Husband also claims the district court committed plain error because it did not make express factual findings on each of the nine elements of fraudulent inducement. On plain error review, we cannot assume that the court committed any legal error simply because it did not expressly recite each element of fraudulent inducement in announcing its ruling. Nothing in the record would lead us to conclude that the court set aside the Postnuptial Agreement without first finding that Wife established each element of fraudulent inducement by clear and convincing evidence.

¶15   Relatedly, Husband claims that the evidence was insufficient to support such findings. The court's ruling identified three evidentiary grounds for setting aside the Postnuptial Agreement based on fraud: (1) "[t]he shortness of time between the signing of the document and the request to move forward with the divorce"; (2) the text messages between Husband and Wife, which were sent immediately after the Postnuptial Agreement was signed; and (3) Husband's testimony "about why he did not want to get back together [with Wife], [was] not valid, and [was] only used as an attempt to justify his actions."

---

2. As evidence that the district court did not apply the clear and convincing evidence standard, Husband points to the judge's statement that, if the Postnuptial Agreement was not set aside, the parties would "be doing a petition to modify anyway, and I think we ought to just get it done." The court's observation that its ruling might ultimately streamline the resolution of this case does not suggest that it applied the wrong evidentiary standard in making that ruling.

¶16   "On appeal, we consider the facts in a light most favorable to the district court's ruling, including its findings." *See Mota v. Mota*, 2016 UT App 201, ¶ 2 n.2, 382 P.3d 1080. Viewed in that light, these findings support each element of fraudulent inducement. Specifically, these facts are sufficient to establish that (1) Husband made a representation (2) concerning the material fact that he intended to reconcile (3) which was false and (4) which Husband knew to be false (5) for the purpose of inducing Wife to sign the Postnuptial Agreement and (6) that Wife acted reasonably and in ignorance of its falsity (7) when she did in fact rely upon it (8) and was thereby induced to enter into the Postnuptial Agreement (9) to her injury and damage. *See Danies*, 2008 UT 51, ¶ 38. Based on the evidence presented, the district court reasonably could have concluded by clear and convincing evidence that Husband induced Wife to agree to the Postnuptial Agreement through fraud. Because Husband has not established plain error, we affirm the district court's ruling setting aside the Postnuptial Agreement.

## II. Marital Debt

¶17   Husband contends that the district court erred when it allocated to each party half the value of the marital funds in the brokerage account but allocated to him the entire debt from a loan that Husband claims was used to fund that account. It is within the discretion of the district court to allocate and divide debts between the parties as long as such findings are based on adequate facts. *See Rehn v. Rehn*, 1999 UT App 41, ¶ 19, 974 P.2d 306. "Showing an abuse of discretion is a heavy burden, and we can properly find abuse only if no reasonable person would take the view adopted by the [district] court." *DeAvila v. DeAvila*, 2017 UT App 146, ¶ 12, 402 P.3d 184 (quotation simplified).

¶18   At trial, Husband testified that the value of the brokerage account at the time of separation was approximately $506,200, but the record does not appear to contain any account statements or other documentary evidence supporting this assessment. Husband and his mother each testified that

Husband's mother largely funded the account with the intent that Husband would manage the money she invested for her benefit. Because Husband also deposited marital funds into the account, he created a spreadsheet to separately track the deposits and capital gains and losses belonging to his mother. According to Husband's spreadsheet that was admitted at trial, marital funds accounted for only twenty-two percent of the brokerage account, or $128,600 after taxes. He further testified that, with Wife's consent, he used $40,000 to purchase some personal property, leaving a balance of $88,600.

¶19 Husband argued that Wife's $44,300 share of the brokerage account should be reduced by $22,820.05, half of a $45,641 loan that Husband owed to Uniformed Services. At trial, Husband testified that he used the Uniformed Services loan to pay off a prior $50,000 loan that he had taken out in June or July 2013. According to Husband, the proceeds of the prior loan were deposited into the brokerage account and his spreadsheet reflects a $50,000 deposit at that time. But the parties have not cited—and our own exhaustive review of the record has not found—any documentary evidence establishing the existence or balance of either loan or how the proceeds of those loans were used. There are no loan documents, account statements, or receipts showing either that the proceeds of the prior loan were deposited into the brokerage account or that the Uniformed Services loan was used to pay off the prior loan.

¶20 The district court noted that it "didn't have a whole lot of great evidence" regarding the value of the brokerage account. Recognizing that it could not do more with the scarce evidence before it, the court found that the value of the marital property in the brokerage account was limited to $88,600, the amount Husband had agreed belonged to the marital estate. The court also rejected Husband's claim that his $45,641 Uniformed Services loan constituted marital debt and ruled that Wife was not obligated to pay the $22,820.05 that Husband requested.

¶21 On this record, Husband cannot establish that the district court abused its discretion in finding that the Uniformed Services loan was not marital debt. Other than his own testimony and an entry in the spreadsheet that he created, Husband offered no evidence to prove either the existence of the loan or that the loan proceeds had been used to fund the brokerage account. *See, e.g.*, *Ouk v. Ouk*, 2015 UT App 104, ¶ 13, 348 P.3d 751 (affirming finding that "Husband did not meet his burden at trial to provide any evidence or documentation proving that all of the proceeds from the line of credit went into" his business); *Godfrey v. Godfrey*, 854 P.2d 585, 587–88 (Utah Ct. App. 1993) (vacating a finding of marital debt where husband failed to produce "any documentation supporting the existence of a lien," such as "loan papers, mortgage or trust deeds, cancelled checks, etc."). In ruling that the Uniformed Services loan was "his debt, not hers," the court implicitly found that Husband had failed to carry his burden to prove that the loan was a marital debt. Given the lack of documentation regarding the loan or the use of its proceeds, the district court acted within its discretion by refusing to reduce Wife's share of the brokerage account by half of the loan's balance.[3]

---

3. In addressing the marital debt issue in his opening brief, Husband inserted a single paragraph claiming that the district court "took a similarly inequitable tack in apportioning the IRAs." Although it is not identified as a separate issue on appeal, Husband argues that Wife's share of the IRAs should have been reduced because she dissipated marital assets by mismanaging her own IRA account after the parties separated. To the extent Husband intended to raise dissipation of marital assets as a separate issue on appeal, Husband's "overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *Sandusky v. Sandusky*, 2018 UT App 34, ¶ 17 (quotation simplified). In particular, Husband does not analyze or offer any support for the proposition that unprofitable investing decisions constitute dissipation of marital

(continued…)

### III. Personal Property

¶22 Husband contends that the district court abused its discretion in valuing the parties' personal property at $48,000 and awarding Wife one half of that amount. A district court has considerable discretion to distribute property in a divorce proceeding, and such distributions are presumed valid. *Dahl v. Dahl*, 2015 UT 79, ¶ 119. We therefore will uphold the district court's decision on appeal "unless a clear and prejudicial abuse of discretion is demonstrated." *Id.* (quotation simplified). In reviewing the district court's decisions, "we will not set aside findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous, and we give due regard to the district court's superior position from which to judge the credibility of witnesses." *Id.* ¶ 121.

¶23 The district court reviewed significant evidence on the value of the parties' shared personal property. At trial, Wife asked for specific personal property to be returned to her. She also submitted a list of shared personal property that would remain with Husband. Wife produced receipts for each of the items on the list, argued that the total value of that shared personal property was approximately $66,000, and asked for half that amount. Husband never claimed that Wife had possession of any of those items, but argued that Wife's valuation was

---

(…continued)

assets, nor does he explain how the district court exceeded its broad discretion by declining to deviate from the general rule that a marital estate is valued at the time of the divorce decree. *See Rayner v. Rayner*, 2013 UT App 269, ¶¶ 19–21, 316 P.3d 455 (explaining the general rule that marital estate is valued at the time of decree or trial, the district court's broad discretion in deciding whether to deviate from this rule, and the factors relevant to whether a party has dissipated marital assets). Because this issue is inadequately briefed, we decline to address it further.

inflated because it was based on the purchase price of the items and failed to reflect their depreciation in value. Based on the evidence presented, the district court estimated the value of the shared personal property at $48,000. Because the property remained in Husband's possession, the district court ruled that Wife was entitled to half of its value, which amounted to $24,000.

¶24 On appeal, Husband claims the district court abused its discretion by awarding Wife half the value of the shared personal property without taking into account the portion of that property already in Wife's possession. Husband argues that "[t]he only way the [district] court's ruling could have been correct is if [Husband] kept all the personal property thereby obligating him to pay [Wife] her half of the total value." But that is precisely what happened. Contrary to Husband's claim, the court did not determine "the value of all marital property, including that retained by [Wife], to be $48,000." Instead, $48,000 represented the value of only those items listed that Wife agreed would remain in Husband's possession.

¶25 Husband points to evidence that Wife kept a vehicle worth $13,000, suggesting that her share of the personal property should have been offset by that amount. But both parties had purchased vehicles during the marriage and neither vehicle was included in the list of shared personal property that Wife submitted. Wife submitted evidence that the value of her vehicle was between $10,782 and $13,140. Husband testified that he sold his vehicle that had been purchased during the marriage for $9,000, although Wife testified that the fair market value of his vehicle was $21,000. Given the evidence that each party kept his or her own vehicle and that the value of each vehicle was at least arguably similar, it was reasonable for the court to exclude the value of both vehicles in calculating the amount of shared personal property.

¶26 Husband has not demonstrated that the district court exceeded its discretion in valuing the shared personal property,

excluding the parties' vehicles, at $48,000. Accordingly, we affirm the district court's award of $24,000 as Wife's share of the value of the remaining personal property retained by Husband.

## IV. Child Support and Alimony

¶27    Husband contends that the district court abused its discretion by calculating alimony and child support based on his monthly income at the time of trial rather than on the lower salary expected to result from an imminent job change. At trial, Husband testified that $9,373 was "an accurate reflection of [his monthly] income." However, he explained that he had planned to separate from his military service and had accepted a job offer with a commercial airline where his monthly salary would start at $1,824. We conclude that the court did not abuse its discretion in basing the child support and alimony awards on Husband's income at the time of trial rather than on his claimed anticipated future income.

¶28    With respect to child support, the district court properly based its award on Husband's verified income. Utah law establishes presumptive guidelines for the award of child support based on the parents' adjusted gross income. *See* Utah Code Ann. §§ 78B-12-202, -301 (LexisNexis 2012). "Each parent shall provide verification of current income," including "year-to-date pay stubs or employer statements and complete copies of tax returns," unless the court finds that such verification is not reasonably available. *Id.* § 78B-12-203(5)(b) (LexisNexis 2012). Because Husband had not yet changed jobs, he had no pay stubs or other documentation to verify his reduced income. Nor did he produce an offer letter from his new employer, confirming that he had been hired and setting forth his anticipated salary. Moreover, whether the anticipated salary change would come to pass was speculative until he actually separated from the military and began his new employment. Based on the lack of verification and the uncertainty regarding Husband's future employment, the district court acted well within its discretion in

basing the award of child support on Husband's income at the time of trial.

¶29 Husband also argues that the district court abused its discretion when it failed to take his imminent job change into account when awarding alimony. Unlike child support, which is presumptively calculated based on income, the district court must consider multiple factors in determining alimony. These factors include "the ability of the payor spouse to provide support" as well as "the financial condition and needs of the recipient spouse" and "the recipient's earning capacity or ability to produce income." *Id.* § 30-3-5(8)(a) (Supp. 2017) (laying out the statutory factors for an alimony determination).

¶30 Here, the court considered the statutory factors and found that Wife "has a need for alimony." Although Wife has a college degree and was making approximately $12 per hour at the time of trial, she was not employed full-time. The court imputed her earning capacity at minimum wage, or $1,257 per month because "she has been out of the job market for a long time." The court found that, given her monthly costs, Wife "needs more money than the child support and minimum wage provide." Given Husband's admitted income of $9,373 per month, the court explained that "there is no question that [Husband] makes more money than [Wife]." Ultimately, the court awarded $1,000 per month in alimony based on both Wife's need and Husband's current ability to pay.

¶31 The district court did not abuse its discretion in considering Husband's current earnings to determine his ability to provide support. In basing the alimony award on Husband's income at the time of trial, the court appears to have made an implicit credibility determination regarding Husband's claim concerning his ability to provide support. At a post-trial hearing regarding the findings of fact in the divorce decree, the court noted that Husband came "into trial making a huge amount of money as a Colonel in the Air Force, and then all of a sudden is making no money because, you know, now it's time to pay

somebody." "It is the province of the trier of fact to assess the credibility of witnesses, and we will not second guess the trial court where there is a reasonable basis to support its findings." *Reed v. Reed*, 806 P.2d 1182, 1184 (Utah 1991). It was within the court's discretion to discredit Husband's claim that he was unable—as opposed to merely unwilling—to provide the support ordered by the court.

¶32    In addition, the district court acted within its discretion in assessing Husband's ability to provide support based on his military pay where the anticipated decrease in salary was not only speculative but also temporary. Indeed, "where the husband has experienced a temporary decrease in income, his historical earnings must be taken into account in determining the amount of alimony to be paid." *Olson v. Olson*, 704 P.2d 564, 566 (Utah 1985) (quotation simplified). Husband testified that his initial salary in his new job would be significantly lower than his current income. However, he acknowledged that his salary would increase dramatically after the first year, from $24 per hour to nearly $40 per hour. Husband also testified that the job did not involve a 40-hour workweek, and that he was guaranteed either 65 or 72 hours per week. Based on this information, it appears that Husband's monthly income would at least approximate his military pay within one year. Because the anticipated decrease was temporary, the district court properly looked to historical earnings to determine Husband's ability to provide support. *See id.*

¶33    Finally, Husband claims that the district court abused its discretion because it was required to consider the imminent decrease in his salary under the governing statute. Utah law provides that "[w]hen a marriage of long duration dissolves on the threshold of a major change in the income of one of the spouses due to the collective efforts of both, that change shall be considered . . . in determining the amount of alimony." Utah Code Ann. § 30-3-5(8)(g) (LexisNexis 2013). Husband does not explain, however, how his anticipated change in income is the result of the parties' collective efforts. Rather, the change in

income appears "unrelated to the efforts put forward by the spouses during marriage." *Martinez v. Martinez*, 818 P.2d 538, 542 (Utah 1991). Typically, this statutory provision deals with an enhancement in a spouse's earning capacity that stems from the collective efforts of both spouses, such as where one spouse has provided financial funding, care for the couple's children, or other support while the other spouse attends school or engages in professional development. *See, e.g.*, *Ashby v. Ashby*, 2010 UT 7, ¶ 26, 227 P.3d 246 (under the governing statute, "one spouse's support of their student spouse's educational efforts is properly considered as a factor in making the alimony determination"). Husband has cited no authority suggesting that this provision applies to a temporary change in income based on a voluntary decision of the payor spouse to seek less lucrative employment. Accordingly, we hold that the court did not exceed its discretion in declining to adjust the alimony award based on Husband's anticipated change in income.

## CONCLUSION

¶34 The district court did not commit plain error in setting aside the Postnuptial Agreement based on fraudulent inducement, nor did it exceed its discretion in allocating marital property and awarding child support and alimony. Accordingly, the district court's judgment is affirmed.

———————