2018 UT App 195

# THE UTAH COURT OF APPEALS

JULIE ANN DOLE,
Appellee,
*v.*
CHRISTOPHER PATTON DOLE,
Appellant.

Opinion
No. 20160702-CA
Filed October 12, 2018

Third District Court, Salt Lake Department
The Honorable Richard D. McKelvie
No. 124905567

Jay L. Kessler, Attorney for Appellant

Michelle L. Christensen and Dillon P. Olson,
Attorneys for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

POHLMAN, Judge:

¶1 Christopher Patton Dole and Julie Ann Dole divorced through a bifurcated decree and reserved several disputed issues for trial, including property division and child support. Following trial, the district court orally ruled on the outstanding issues, and entered its written findings and conclusions with the final decree. Christopher appeals the court's rulings with respect to income imputation, tax exemptions, and personal and real property divisions.[1] He also appeals the court's denial of his

---

1. Because the parties share a surname, we refer to them here by their first names, with no disrespect intended by the apparent

(continued…)

post-trial motion seeking rulings on issues he claims were left unresolved. We affirm in part and dismiss the remainder of the appeal for lack of jurisdiction.

ANALYSIS

I. Findings and Conclusions

¶2    Christopher first argues that the district court erred in a variety of ways in rendering its final findings and conclusions of law. In particular, he challenges the court's decisions to (A) impute income to him, (B) award Julie the annual tax exemptions for their two children until they reach the age of majority, and (C) divide the personal and real property as it did.

¶3    We review challenges to factual findings for clear error, reversing only if the findings "are in conflict with the clear weight of the evidence, or if this court has a definite and firm conviction that a mistake has been made." *Kidd v. Kidd*, 2014 UT App 26, ¶ 13, 321 P.3d 200 (quotation simplified). We review the court's interpretation of relevant statutes for correctness. *Dahl v. Dahl*, 2015 UT 79, ¶ 155. Finally, to the extent Christopher challenges the adequacy of the court's findings and whether they support its ultimate conclusions, we review that issue for correctness. *Shuman v. Shuman*, 2017 UT App 192, ¶ 2, 406 P.3d 258. The court must support its decisions "with adequate findings and conclusions," which include enough detail and subsidiary facts "to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Kidd*, 2014 UT App 26, ¶ 13 (quotations simplified); *see also Fish v. Fish*, 2016 UT App 125, ¶ 22, 379 P.3d 882 ("Findings are adequate when they contain sufficient detail to permit appellate review to ensure that

_____

(…continued)
informality. *See, e.g., Smith v. Smith*, 2017 UT App 40, ¶ 2 n.1, 392 P.3d 985.

the district court's discretionary determination was rationally based."). In this regard, "unstated findings can be implied if it is reasonable to assume that the trial court actually considered the controverted evidence and necessarily made a finding to resolve the controversy, but simply failed to record the factual determination it made." *Fish*, 2016 UT App 125, ¶ 22 (quotation simplified).

¶4     We address each of Christopher's contentions below and affirm.

A.     Income Imputation

¶5     Christopher argues that the district court erred in imputing $55,000 annual income to him for purposes of calculating child support. In particular, he contends that the court failed to perform the income imputation test outlined in Utah Code section 78B-12-203(7)(b). Christopher claims that the court's findings do not reflect consideration of his historical income or his employment capacity and earning potential, and that the court's decision is therefore insufficiently supported.[2] He also contends that the court improperly disregarded evidence of his disabilities. We disagree.

¶6     "Because trial courts have broad discretion to award child support, we will not disturb such decisions absent an abuse of discretion." *Reller v. Argenziano*, 2015 UT App 241, ¶ 15, 360 P.3d 768 (quotation simplified). "That means that as long as the court exercised its discretion within the bounds and under the standards we have set and has supported its decision with

---

2. Christopher also claims that the court failed to determine whether he was voluntarily unemployed or underemployed, which he asserts it was required to do. However, this court has already rejected the legal assertion on which his argument depends. *See, e.g.*, *Reller v. Argenziano*, 2015 UT App 241, ¶¶ 32–33, 360 P.3d 768. That rejection stands.

adequate findings and conclusions, we will not substitute our judgment for the trial court's." *Id.* (quotation simplified).

¶7　At the time of trial, section 78B-12-203(7)(b) provided,

> If income is imputed to a parent, the income shall be based upon employment potential and probable earnings as derived from employment opportunities, work history, occupation qualifications, and prevailing earnings for persons of similar backgrounds in the community, or the median earning for persons in the same occupation in the same geographical area as found in the statistics maintained by the Bureau of Labor Statistics.

Utah Code Ann. § 78B-12-203(7)(b) (LexisNexis 2012). For purposes of calculating child support, the district court imputed $55,000 of annual income to Christopher. It arrived at this figure by relying on a vocational expert's opinion and the domestic relations commissioner's findings regarding income. In doing so, the court stated that "[t]he actual income of [Christopher] is impossible to determine" due to Christopher's "dishonesty to this Court, to his unaccountable income, [and to] his failure and refusal to obtain traditional employment." Indeed, the court noted that "much of the income that [Christopher] derives through his purchase and sale of [equipment] is unaccountable."

¶8　Contrary to Christopher's assertions, the court clearly stated in its oral and written findings that it based its imputation in part on the vocational expert's opinion, which addressed the section 78B-12-203(7)(b) factors. This is sufficient to support the court's imputation decision. *See Vanderzon v. Vanderzon*, 2017 UT App 150, ¶¶ 65–71, 402 P.3d 219 (explaining that we may affirm a district court's imputation determination if "we can infer the necessary findings from the vocational expert's report and testimony," and affirming the court's imputation finding where

"the expert's report addresse[d] all of the factors required by section 78B-12-203(7)(b)"). The vocational expert's trial testimony and report included information regarding Christopher's nearly twenty-year work history, his employment capacity, and his earning potential in light of his education and experience. Thus, the expert's report and testimony make clear that the district court considered the relevant statutory factors. *See id.*

¶9    Christopher also faults the court for disregarding his disabilities in rendering its imputation decision. But a court is not required to "render a global accounting of all evidence presented or to discuss all aspects of a case that might support a contrary ruling." *Shuman v. Shuman*, 2017 UT App 192, ¶ 6, 406 P.3d 258. Even if a court "fails to make findings" about what an appellant considers to be "a material issue, we assume the court found them in accord with its decision, and we affirm the decision if from the evidence it would be reasonable to find facts to support it." *See Widdison v. Widdison*, 2014 UT App 233, ¶ 6, 336 P.3d 1106 (quotation simplified).

¶10    Here, to the extent that information about Christopher's disabilities was relevant to the court's imputation analysis, *see generally* Utah Code Ann. § 78B-12-203(7)(d) (providing that income may not be imputed if "a parent is physically or mentally unable to earn minimum wage" and that condition "is not of a temporary nature"), that evidence was presented during trial and specifically discussed during the vocational expert's testimony, *see Vanderzon*, 2017 UT App 150, ¶¶ 65–71. And other than flatly asserting that the court disregarded that evidence, Christopher provides no legal or factual basis from which we may presume that the court did not consider the evidence about his disabilities in imputing income to him. *See* Utah R. App. P. 24(a)(8) (setting out the appellant's briefing requirements, which includes providing "reasoned analysis supported by citations to legal authority and the record" to explain why the appellant "should prevail on appeal"). *See generally Gerwe v. Gerwe*, 2018 UT App 75, ¶ 13, 424 P.3d 1113 ("A reviewing court will not

presume from a silent record that the court applied an incorrect legal standard but must presume the regularity and validity of the district court's proceedings, and that it applied the correct legal standard, in the absence of evidence to the contrary." (quotation simplified)); *Widdison*, 2014 UT App 233, ¶ 6. Because Christopher has not provided a basis from which we could conclude that the court failed to consider his disabilities, we presume that the court properly considered Christopher's disabilities in imputing income to him.

¶11 Accordingly, Christopher has failed to demonstrate error in the court's imputation decision.

B. Tax Exemptions

¶12 Christopher next argues that the court erred in awarding Julie the annual tax exemptions for both of their children through the age of majority. We generally review a district court's decision to award tax exemptions for abuse of discretion. *See Hill v. Hill*, 869 P.2d 963, 967 (Utah Ct. App. 1994).

¶13 Tax exemption awards are governed by Utah Code section 78B-12-217, which provides:

> (1) No presumption exists as to which parent should be awarded the right to claim a child or children as exemptions for federal and state income tax purposes. Unless the parties otherwise stipulate in writing, the court . . . shall award in any final order the exemption on a case-by-case basis.
>
> (2) In awarding the exemption, the court . . . shall consider: (a) as the primary factor, the relative contribution of each parent to the cost of raising the child; and (b) among other factors, the relative tax benefit to each parent.

(3) Notwithstanding Subsection (2), the court . . . may not award any exemption to the noncustodial parent if that parent is not current in his child support obligation, in which case the court . . . may award an exemption to the custodial parent.

(4) An exemption may not be awarded to a parent unless the award will result in a tax benefit to that parent.

Here, the court awarded Julie the annual tax exemptions for both children for two reasons. First, it determined that Julie bore "the bulk of the expenses of the children." Second, it determined that, given that Julie earned more than twice Christopher's income at the time of trial, the tax advantages would work in both parties' favor if Julie claimed the exemptions because of their respective tax rates.

¶14    Christopher argues that the court erred because the statute should be interpreted to mean that exemptions should be awarded "exclusively to a party [only] when the other party gives very little or nothing to the custodial parent in the way of child support or other financial benefits," which he contends are not the circumstances in this case. On this basis, he claims that the annual exemptions should have been split and that he was entitled to one of the two exemptions.

¶15    Christopher's argument requires us to construe the tax exemption statute. The "primary objective of statutory interpretation is to ascertain the intent of the legislature," and "the best evidence of the legislature's intent is the plain language of the statute itself." *See Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (quotations simplified). We therefore "look first to the plain language of the statute," presuming that "the legislature used each word advisedly," and "when we can ascertain the intent of the legislature from the statutory terms alone, no other interpretive tools are needed, and our task of statutory construction is typically at an end." *Id.* (quotations simplified).

¶16 The plain language of section 78B-12-217 does not support Christopher's proposed interpretation or application. Rather than dictate circumstances through which a parent may gain entitlement to an exemption, section 78B-12-217 instructs that "[n]o presumption" governs the award of tax exemptions and that, instead, they must be awarded "on a case-by-case basis." Utah Code Ann. § 78B-12-217(1) (LexisNexis 2012). In this regard, courts are instructed to consider relevant factors, including two in particular: "as the primary factor, the relative contribution of each parent to the cost of raising the child"; and, next, "the relative tax benefit to each parent." *Id.* § 78B-12-217(2). But the statute does not instruct the court to treat the factors as vesting requirements toward a parent's entitlement to an exemption—that, for example, a parent becomes entitled to an exemption if he or she pays child support and may enjoy some tax benefit. Indeed, while the statute provides that a noncustodial parent may not be awarded an exemption if he or she is not current as to any child support obligation or will not enjoy a tax benefit, *see id.* § 78B-12-217(3)–(4), the statute does not provide for the inverse—that when a noncustodial parent *is* current on his or her child support obligation or may enjoy a tax benefit, he or she is always entitled to an award of a tax exemption. Thus, the plain language of the statute leaves the awarding of exemptions squarely in the sound discretion of the district court and its assessment of the unique circumstances of each case.

¶17 In this case, the district court appropriately followed the statute in rendering its decision. As required, it specifically considered each party's relative contributions to the cost of raising their children and the relative tax benefits to each. Because it determined that Julie bears "the bulk of the expenses of the children" and that the tax advantages to both parents are more favorable if Julie claimed both children on her taxes, it awarded both exemptions to Julie. We can

discern no abuse of discretion in its decision, under these circumstances, to award them both to Julie.

¶18 Still, Christopher disagrees with the court's assessment of the evidence. He asserts that the court failed to consider the monetary support he provides to raise the children and that he would receive a "very good tax benefit if allowed to take an exemption." He argues that both his financial contributions and the tax benefit he could receive "should have been sufficient to be awarded one of the child tax exemptions." But Christopher has not pointed to anything in the record suggesting that the court failed to consider his monetary support in rendering its decision. *See generally Shuman v. Shuman*, 2017 UT App 192, ¶ 6, 406 P.3d 258 (stating that a district court is "not required to render a global accounting of all evidence presented or to discuss all aspects of a case that might support a contrary ruling"). And given that the court rendered specific orders in its ruling regarding Christopher's various financial obligations for raising the children—such as for child support, insurance premiums, unpaid medical costs, and counseling fees—it is unreasonable to infer that the court then failed to consider Christopher's financial contributions to support the children in rendering its tax exemption decision.

¶19 Further, although Christopher appears to challenge the court's evaluation of the tax benefit he might receive if awarded an exemption, he has failed to challenge the court's finding that the tax advantages are more favorable to both parties if Julie received both of the exemptions. *See id.* ¶ 8 ("Parties challenging factual findings cannot persuasively carry their burden . . . by simply listing or rehashing the evidence and arguments they presented during trial or by merely pointing to evidence that might have supported findings more favorable to them . . . ." (quotation simplified)); *Taft v. Taft*, 2016 UT App 135, ¶ 43, 379 P.3d 890 (explaining that an appellant cannot prevail when challenging a district court's resolution of a factual issue by "merely pointing to evidence that might have supported findings more favorable to [the appellant]"). His claim that he

would receive a "very good" tax benefit if awarded an exemption is therefore inapposite.

¶20    Accordingly, we affirm the district court's decision to award Julie the tax exemptions for both children until they reach the age of majority.

C.    Property Division

¶21    Christopher attacks several of the court's property distribution decisions. "Trial courts have considerable discretion in determining property distribution in divorce cases, and their decisions will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Donnelly v. Donnelly*, 2013 UT App 84, ¶ 13, 301 P.3d 6 (quotation simplified). "Showing an abuse of discretion is a heavy burden, and we can properly find abuse only if no reasonable person would take the view adopted by the district court." *Gerwe v. Gerwe*, 2018 UT App 75, ¶ 17, 424 P.3d 1113 (quotation simplified).

¶22    Christopher challenges the court's decisions to (1) afford Julie discretion to determine what funds she will use to give Christopher his share of her retirement account; (2) allow Julie to stay in the marital home rather than ordering all four of the parties' real properties sold; (3) award Julie the majority of the marital personal property; and (4) award Julie half of certain business inventory, which he claims amounted to his "only means of income." We address each challenge below.

1.    Retirement Account

¶23    Christopher argues that the court exceeded its discretion in setting the terms of Julie's retirement account division. The court awarded Christopher half of Julie's retirement account and provided that Julie would have the "sole discretion" to decide "whether or not that amount comes from her retirement account or whether it comes from the other amounts awarded in this ruling." Christopher contends that it was an abuse of discretion

to permit Julie the "sole discretion" to decide from which funds to pay Christopher his portion of her retirement account. He claims that, because the parties "have been so acrimonious throughout this divorce process, giving [Julie] discretion as to how or when [Christopher] receives his portion of the retirement is tantamount to his never receiving it."

¶24 Christopher relies on the contentious nature of the divorce to claim error in the court's decision, but he has provided no reasoned analysis to suggest that it is an abuse of discretion to allow one of the parties in an acrimonious divorce the discretion to determine the source of funds to pay the other party his or her half of a retirement account. *See Roberts v. Roberts*, 2014 UT App 211, ¶ 36, 335 P.3d 378 (affirming the trial court's adjustment of the financial interests of the parties in a divorce action where the husband offered "little analysis" to support his argument that the court's adjustment was an abuse of discretion and where the husband did not "point to any evidence in the record to support [his] assertions" or direct the reviewing court "to any authority that is inconsistent with the trial court's analysis"). For example, Christopher does not explain why the acrimonious nature of the divorce necessarily renders his retirement account award illusory, nor does he cite any evidence in the record suggesting that Julie has exercised her discretion, or intends to exercise her discretion, in a manner that will result in him not receiving his awarded portion.[3] *See id.* Thus, we conclude that Christopher has not demonstrated that no reasonable person would afford Julie the discretion to

---

3. In this regard, Christopher concedes on appeal that there is "much still to be determined between the parties as to what is owed each party" regarding the property division, given that the parties are still in the process of selling their several homes, which seems to support the court's decision to vest Julie with this discretion.

determine from which funds she will pay Christopher his share of her retirement account.

### 2. The Parties' Real Properties

¶25 Christopher argues that the district court erred by not ordering that all of the parties' four properties—particularly, the marital home—be sold. He claims that "the only real way to obtain the true value of the marital home was to sell it" and that, because the court did not order the parties to sell each of the four properties, he has not received his equitable share of the properties' true values.[4]

¶26 The district court decided that each party was entitled to reside in one of the parties' properties and that the other two properties should be sold. As to the marital home, the court determined that Julie could stay in the marital home with the children and that Christopher would be entitled to one-half of the equity in the home, less amounts of liens, encumbrances, and the costs of repairs and improvements. For Christopher, Julie was entitled to half of the equity in the property he resided in, subject to the same deductions.

¶27 Although Christopher disagrees with the court's decision to allow Julie to stay in the marital home with the children,

---

4. Christopher also argues that the court erred in relying on Julie's appraisal for the marital home, which he claims undervalued it. However, Christopher concedes that the court's reliance on Julie's appraisal was apparently done in a June 2017 proceeding, nearly one year after the court entered its final decree. Christopher filed his notice of appeal before that time, and he has not shown where this issue was preserved or that it falls within the scope of our jurisdiction. We therefore do not consider whether the court's decision to rely on Julie's appraisal to value the marital home was proper.

Christopher has not shown that "no reasonable person" would have awarded Julie the marital home and permitted her to live in it with the children rather than sell it. *Gerwe v. Gerwe*, 2018 UT App 75, ¶ 17, 424 P.3d 1113 (quotation simplified). While the district court perhaps *could* have ordered all of the properties sold, including the marital home, Christopher has not demonstrated that it was an abuse of the court's discretion not to do so under the circumstances. Indeed, the case Christopher primarily relies on to make his argument—*Baker v. Baker*, 866 P.2d 540 (Utah Ct. App. 1993)—does not stand for the proposition that a court exceeds its discretion in declining to order the sale of the marital home. Rather, in *Baker* we merely affirmed the district court's decision that, in the totality of the circumstances in play in that case, ordering the sale of the marital home was equitable and within the court's discretion. *Id.* at 544. And Christopher cannot otherwise prevail on appeal simply by arguing that he believes the court should have exercised its discretion to reach the determination he would have preferred. *See Gerwe*, 2018 UT App 75, ¶ 17; *Shuman v. Shuman*, 2017 UT App 192, ¶ 8, 406 P.3d 258 ("Parties challenging factual findings cannot persuasively carry their burden . . . by simply listing or rehashing the evidence and arguments they presented during trial or by merely pointing to evidence that might have supported findings more favorable to them . . . ." (quotation simplified)). Thus, we affirm the court's decision to award Julie the marital home and allow her to stay in it rather than sell it.

3. Personal Property

¶28 Christopher argues that the district court "erred by giving [Julie] almost all of the marital personal property" because the division was inequitable.[5] Christopher contends that he was

---

5. At trial, Christopher offered a list of the marital personal property. While the list he offered did not include a value of the marital personal property, he contended that, except for jewelry

(continued…)

"clearly . . . shortchanged" by the court's order and that he should "either receive one-half of the personal property [Julie has] or an offset therein." He states that he believes that Julie "has almost all of the personal property." But Christopher has failed to demonstrate that the court's property division was improper.

¶29   The district court awarded each party the personal "property currently in their possession." In doing so, the court provided that either party could claim property in the other party's possession that "is uniquely theirs" if they did so within thirty days of the court's ruling. The court also generally invited the parties to submit a motion for reconsideration on issues they felt were incorrect, so long as they did so within fourteen days of the court's ruling. Otherwise, there would be "no award or offset for personal property, other than [what was] designated" in the court's ruling.

¶30   Christopher never filed a request for his unique personal property after the court's order was entered. Instead, Christopher's assertion of error on appeal relies on only his "belie[f]" that Julie "has almost all of the personal property." But assertions of error based on speculation or individual belief are not sufficient to overcome the presumption that the court's personal property award was proper. *See Andersen v. Andersen*, 2016 UT App 182, ¶ 17, 379 P.3d 933 (explaining that "we afford the trial court considerable latitude in adjusting financial and property interests, and its actions are entitled to a presumption of validity" (quotation simplified)). Christopher has provided no citation to record evidence demonstrating that at the time of the court's ruling Julie had "almost all" of the personal property in her possession. And although Christopher submitted a list of personal property to the court and generally requested that the

_____

(…continued)

and collector cards, the value of the marital personal property was around $10,000.

court divide the personal property equitably, Christopher's list did not indicate the value of each item or indicate which specific items were in either party's possession.

¶31 Moreover, the marital personal property was only one part of the court's overall adjustment of the parties' property and financial interests, and Christopher has not shown that the court's decision to award the parties the personal property in their possession was inequitable in light of the court's division of the marital property and assets in its totality. *See Goggin v. Goggin*, 2013 UT 16, ¶ 48, 299 P.3d 1079 (explaining that "the appropriate distribution of property varies from case to case, and the overriding consideration is that the ultimate division be equitable—that property be fairly divided between the parties, given their contributions during the marriage and their circumstances at the time of the divorce" (quotation simplified)); *Shuman*, 2017 UT App 192, ¶ 18 (concluding that the husband had inadequately briefed his argument that the court's division of the parties' debt was inequitable where he failed to "address the broader picture of the parties' relative circumstances to demonstrate that, given the overall distribution of assets and debts and the parties' relative incomes and expenses, etc.," the court's ruling was improper).

¶32 Thus, Christopher has not demonstrated that the court exceeded its discretion in awarding the parties the personal property in their possession at the time of its ruling.

4.  Business Inventory

¶33 Christopher contends the district court erred in determining that certain business inventory, which the court valued at $30,000, was marital property subject to division and in awarding Julie half its value. He generally complains that the court's decision is inequitable by failing to hold Julie to "the same standard," given that the court did not require Julie to divide with Christopher income she earned during the marriage. He asserts that the court instead should have characterized the

equipment as his "income" and suggests the court therefore should have awarded all of it to him as his separate property.[6]

¶34 In treating the inventory as marital property and thus awarding Julie half its value, the district court determined that Christopher was "dishonest in his testimony about his dealing with the property that was both marital property and non-marital property" and, as to this particular $30,000 inventory, that Christopher had "falsely claim[ed] [the equipment] had previously been sold." The court then found that Julie was entitled to a $15,000 credit or offset for it.[7]

¶35 Christopher has not shown that the court's findings relating to the business inventory are clearly erroneous. *See generally Dahl v. Dahl*, 2015 UT 79, ¶ 182 (explaining that "conclusory allegations are insufficient to overcome our highly deferential review of the district court's findings of fact"). And he has not otherwise shown that "no reasonable person" would have deemed the equipment to be marital property and awarded

---

6. Christopher's plea for equality suggests that the court treated income Julie earned during the marriage as her separate property. But Christopher identifies nothing in the record to validate that suggestion.

7. Christopher claims that the ruling is vague regarding whether the district court awarded Julie half of the inventory's value because it designated the inventory as marital property or because it did so to sanction Christopher for his dishonesty. We disagree. There is no mention of sanctions in the court's findings; rather, they indicate that the court found incredible Christopher's contention that this inventory was not part of the marital estate because it had been sold. We therefore construe the court's findings regarding Christopher's dishonesty as on-the-record credibility determinations related to its assessment of whether the equipment was part of the marital estate, rather than findings to support imposing a sanction.

Julie half its value in light of the court's broad discretion to adjust and divide marital property in divorce as well as the presumption that property acquired during a marriage is marital property to be divided equally. *See Gerwe v. Gerwe*, 2018 UT App 75, ¶ 17, 424 P.3d 1113 (quotation simplified); *see also Dahl*, 2015 UT 79, ¶ 119 (explaining the court's "considerable discretion" to divide marital property); *id.* ¶ 26 ("Utah law presumes that property acquired during a marriage is marital property subject to equitable distribution."); *Olsen v. Olsen*, 2007 UT App 296, ¶ 23, 169 P.3d 765 (stating that "[i]n Utah, marital property is ordinarily divided equally between the divorcing spouses"). Further, his argument does not address the overall distribution of the parties' property and financial interests, and Christopher fails to show why the court's disposition of the business inventory compared to Julie's income is inequitable on the whole. *See Shuman v. Shuman*, 2017 UT App 192, ¶ 18, 406 P.3d 258. Accordingly, we will not set aside the district court's division of the business inventory.

¶36   In sum, we affirm the district court's rulings regarding income imputation, tax exemptions, and the property division.

## II.  The Post-trial Motion

¶37   Christopher next argues that the district court exceeded its discretion when it denied his post-trial motion, which sought modification of the findings and judgment. *See* Utah R. Civ. P. 52(b) ("Upon motion of a party filed no later than 28 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly."). In particular, he requested the court make findings and rule on the following: (1) the division of marital pictures; (2) the division of $2,000 that was in a joint bank account; (3) an offset in Christopher's favor for approximately $8,200 of business equipment Julie auctioned; (4) rental offsets of the parties' rental homes; and (5) division of other of Julie's retirement benefits. Christopher also asked the court to address its findings in support of its order

requiring Christopher to pay $610 for window repair at the marital home. Christopher argued that $610 represented the cost to repair two windows while the decree suggests the court held him responsible for the cost of replacing a single "broken window."

¶38   In July 2016,[8] Christopher filed his post-trial motion. On October 13, 2016—after Christopher filed his notice of appeal—the court denied the motion, in part because the court had already "resolved the issues raised by [Christopher]." Thereafter, Christopher did not file a new or amended notice of appeal.

¶39   A notice of appeal generally must be filed "within 30 days after the date of entry of the judgment or order appealed from." Utah R. App. P. 4(a). If a party files a notice of appeal after entry of judgment but before entry of an order disposing of certain kinds of motions, including a motion under rule 52(b) of the Utah Rules of Civil Procedure that is filed no later than twenty-eight days after the judgment is entered, the notice of appeal "is effective to appeal only from the underlying judgment." *Id.* R. 4(b)(2). In those circumstances, to appeal from the postjudgment order disposing of a rule 52(b) motion, "a party must file . . . an amended notice of appeal." *Id.*

¶40   Christopher filed his notice of appeal after the district court entered the final decree but before the court ruled on his post-trial motion. Because he did not file a new or amended notice of appeal after the court issued its order disposing of his motion, Christopher's notice of appeal is "effective to appeal only from the underlying judgment." *See id.* (explaining that to appeal from a final

---

8. Although Christopher filed an objection to Julie's proposed decree on June 13, 2016, he did not include the allegedly pending issues as a basis for an objection.

order disposing of a rule 52(b) motion, "a party must file a notice of appeal or an amended notice of appeal"). As a result, we lack jurisdiction to consider his arguments related to his post-trial motion.[9] *See Dennett v. Ferber*, 2013 UT App 209, ¶ 4, 309 P.3d 313 (per curiam) (concluding that because the appellant did not file a new or amended notice of appeal after the entry of the order resolving a similar post-trial motion, this court "lack[ed] jurisdiction to resolve any issues raised by" the appellant in the post-trial motion).

---

9. Christopher includes his challenge to the court's ruling regarding the broken windows in the section of his brief dedicated to the issues we resolve in Part I. But Christopher's challenge is primarily directed toward the adequacy of the court's findings—an issue he raised in his post-trial motion. *See generally In re K.F.*, 2009 UT 4, ¶¶ 61–63, 201 P.3d 985 (requiring appellants to "object to the adequacy of the detail of the trial court's findings before appeal" and to present the issue to the trial court "in such a way that the trial court has an opportunity to rule on that issue" (quotation simplified)). For the reasons stated above, we do not have jurisdiction to consider this challenge. To the extent Christopher contends there was insufficient evidence to hold him responsible for the cost to repair two windows, we would have jurisdiction over that challenge, but we reject his argument. Christopher testified that he broke a large picture window when he slipped off a toolbox while trying to gain access to the house. Julie testified that the basement window underneath the picture window was broken at the same time. The parties' testimony, and the reasonable inferences drawn therefrom, provided sufficient evidence to support the district court's ruling. *See generally Choate v. ARS-Fresno LLC*, 2016 UT App 249, ¶ 8, 391 P.3d 344 (explaining that an appellate court "will not overturn a verdict on a challenge to the sufficiency of the evidence so long as some evidence and reasonable inferences support" the fact-finder's findings (quotation simplified)).

CONCLUSION

¶41   We affirm the district court's rulings with respect to income imputation, tax exemptions, and personal and real property divisions. We dismiss for lack of jurisdiction Christopher's appeal to the extent he challenges the district court's denial of his post-trial motion.

—————